(No. 48658.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. ALFRED MORGAN, Appellant.

*Opinion filed June 1, 1977.*

James J. Doherty, Public Defender, of Chicago (Robert P. Isaacson, Assistant Public Defender, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, of Chicago, and Laurence J. Bolon and Renee G. Goldfarb, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE DOOLEY delivered the opinion of the court:

Is a statement inadmissible in a criminal proceeding when made by a defendant who initially desires the advice of counsel before making it, but who subsequently voluntarily makes it without the aid of counsel? This is the question we decide here.

Defendant, Alfred Morgan, and four other persons, Cecilia Walker, Ollie Lee, James Wilkerson (also known as James Wilkens), and Mae Lisa Lee, were jointly indicted in Cook County for the murder and armed robbery of Theodore Fletcher. Defendant obtained a severance. After a bench trial he was convicted on each charge and was sentenced to serve concurrent terms of 20 to 25 years. The appellate court affirmed the conviction, but reduced each sentence to a term of 14 to 20 years (39 Ill. App. 3d 588). We granted the defendant's petition for leave to appeal pursuant to Rule 315 (58 Ill. 2d R. 315).

The testimony is set out in detail in the opinion of the appellate court and need only be summarized. Fletcher was murdered in Robbins, Illinois, the morning of September 9, 1972. Defendant was arrested later that day and taken to the Robbins police station. An assistant State's Attorney, preparatory to interrogating defendant, advised him of his *Miranda* rights (*Miranda v. Arizona* (1966), 384

U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602). Defendant at first said that he would give a statement without a lawyer. After further discussion with the State's Attorney, defendant said that he desired an attorney. The interrogation accordingly did not proceed.

Defendant was placed in another room, where he remained alone for about half an hour while the assistant State's Attorney attempted to contact the public defender's office in order to obtain counsel. While the State's Attorney was so engaged, a police officer visited the room where defendant was, and defendant then asked if he could finish his statement. At this juncture the officer told defendant that a statement from him was no longer wanted since Mae Lisa Lee, who had also been arrested in connection with the robbery and murder of Fletcher, had given a statement implicating defendant.

The officer relayed to the State's Attorney defendant's desire to make a statement, and defendant was brought in. The State's Attorney again advised defendant of his constitutional rights. Defendant stated that he did not want an attorney, because the latter might get him confused. Defendant then gave an inculpatory statement. After a hearing, his pretrial motion to suppress that statement was denied, and the statement was introduced at his trial.

Defendant contends that his statement was inadmissible, because it was made without the presence of counsel which he had earlier requested.

The appellate court rejected this contention, on the basis of *Michigan v. Mosley* (1975), 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321. There Mosley had been arrested in connection with several robberies. While in police custody, after being given *Miranda* warnings, he said he did not wish to answer any questions about the robberies, and the interrogation ceased. Two hours later he was taken to a different bureau of the police department, where he was questioned by a different officer about an unrelated

murder. He was again given *Miranda* warnings, and, in addition, was told that another person had made a confession to the murder which implicated him. On this occasion Mosley did not exercise his right to remain silent, and gave an inculpatory statement.

The Supreme Court held that the second interrogation was not proscribed by *Miranda,* notwithstanding a comment in *Miranda* that if an individual "indicates *** that he wishes to remain silent, the interrogation must cease." (384 U.S. 436, 473-74, 16 L. Ed. 2d 694, 723, 86 S. Ct. 1602, 1627.) The court held that the quoted passage could not be interpreted as barring all statements by one in custody.

The court stated:

"Another possible construction of the passage would characterize 'any statement taken after the person invokes his privilege' as 'the product of compulsion' and would therefore mandate its exclusion from evidence, even if it were volunteered by the person in custody without any further interrogation whatever. ***

*** [A] blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests." 423 U.S. 96, 102, 46 L. Ed. 2d 313, 320, 96 S. Ct. 321, 325-26.

The defendant in *Mosley* made no request for counsel, so that the precise point involved here was not decided. In principle, however, the reasoning in *Mosley* is applicable. If a defendant may waive his right to silence after initially claiming it, his initial request to have an attorney present may also be voluntarily withdrawn. An initial request for

counsel is not irreversible, absent a showing that the expressed desire to make a statement without the presence of counsel was made under the force of continued impermissible interrogation. Here, of course, there was no further interrogation, since defendant stated on his own that he wished to make a statement without having counsel present.

Our conclusion is also supported by a further comment in *Miranda,* which follows the excerpt quoted in the preceding paragraph, where the court remarked:

"This does not mean, as some have suggested, that each police station must have a 'station house lawyer' present at all times to advise prisoners. It does mean, however, that if police propose to interrogate a person they must make known to him that he is entitled to a lawyer and that if he cannot afford one, a lawyer will be provided for him prior to any interrogation. If authorities conclude that they will not provide counsel during a reasonable period of time in which investigation in the field is carried out, they may refrain from doing so without violating the person's Fifth Amendment privilege so long as they do not question him during that time." (384 U.S. 436, 474, 16 L. Ed. 2d 694, 724, 86 S. Ct. 1602, 1628.)

Here there was no infringement upon any constitutional right of the defendant. No authority prohibits one charged with a crime from voluntarily making a statement to law-enforcement authorities after he has been advised of his constitutional rights. Here defendant was not only warned, but his initial request for counsel was honored and there was no interrogation. The statement was taken only after defendant expressed a desire to give it without the presence of any attorney. This was a right which he freely exercised. In *People v. Henenberg* (1973), 55 Ill. 2d 5, cited by neither party, this court reversed a judgment

where the defendant repeatedly expressed his desire for counsel but the police nonetheless persisted in interrogating him. This is not the situation here. The statement was properly admitted.

According to the statement, on September 8, the day preceding the murder, defendant was present at a conversation held in a house owned by Mae Lisa Lee, with whom Fletcher was living. The others present were Ms. Lee, her brother, Ollie Lee, James Wilkerson, Cecilia Walker, and a man named Ben Adams. One of those present mentioned that Fletcher was expecting a check. Ms. Lee complained that Fletcher owed her rent, and that she was going to take the money from him.

A discussion followed on how to accomplish this objective. The various participants were given various assignments, such as acting as lookouts. Defendant's specific role is not disclosed. His statement represents that he told the others: "I don't want nothing to do with it, but I will go there. I want no money or nothing. I will not touch it. I don't want my fingerprints shown on nothing."

The murder of Fletcher took place about 2 a.m. on September 9 in the front yard of Ms. Lee's house. Wilkerson struck the victim with a two-by-four while Ollie Lee hit him with a hammer. Defendant was standing about 15 feet away, and witnessed the fatal beating. He denied having taken any part in it, however. After the attack on Fletcher, Wilkerson and Ollie Lee divided up Fletcher's money among various members of the group. Defendant stated that he received none of the money.

At the trial defendant testified in his own behalf, substantially in accord with the statement given the police.

The State granted Ms. Lee immunity, and she testified for the prosecution. Her account of the events of September 8 and 9 differed in some respects from that given in defendant's statement. She did testify, however, to having heard a conversation in her yard among defendant, Adams, and two other unidentified persons

"about getting some money." Somewhat later Ms. Lee, who had been drinking, fell asleep on a couch. She was awakened by loud laughter, and observed defendant, Adams, and McKinley counting and dividing up money. She saw defendant with money in his hands.

Defendant was tried and convicted on an accountability theory under section 5—2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 5—2(c)), which provides in pertinent part as follows:

> "A person is legally accountable for the conduct of another when:
>
> * * *
>
> (c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

The appellate court conceded that a defendant's mere presence or "negative acquiescence" does not establish accountability. The court went on to hold, however:

> "Where one attaches himself to a group bent on illegal acts which are dangerous or homicidal in character, or which will probably or necessarily require the use of force and violence that could result in the taking of life unlawfully, he becomes accountable for any wrongdoings committed by other members of the group in furtherance of the common purpose, or as a natural or probable consequence thereof even though he did not actively participate in the overt act itself. [Citations.] Mere presence or negative acquiescence is not enough to make one a principal to a crime. [Citations.] However, a person may aid or abet without actively participating in the overt act and if the proof shows that he was present at the commission of the crime without disapproving or opposing it, the trier of fact may consider this conduct in connection with other circumstances

and thereby reach a conclusion that such person assented to the commission of the crime, lent to it his countenance and approval, and was thereby aiding and abetting it. [Citations.] " 39 Ill. App. 3d 588, 597-98.

See also *People v. Hughes* (1962), 26 Ill. 2d 114, 119-20; *People v. Tate* (1957), 63 Ill. 2d 105, 109-12.

The decision of the appellate court is correct. Defendant was acquainted with the other participants in the crime. His presence at the scene was not fortuitous or coincidental. On the contrary, he had been informed of the plot to rob Fletcher, a venture which could be expected to contain a risk of violence. While the evidence does not show what specific function defendant was to or did perform in the plot, Ms. Lee saw him holding some of the money as it was being divided up. The fact that he received a share of the proceeds is inconsistent with his claim that he played no part in the plan to rob Fletcher.

As this court said in *People v. Washington* (1962), 26 Ill. 2d 207, 209:

"[I] f the proof shows that a person was present at the commission of the crime without disapproving or opposing it, it is competent for the trier of fact to consider this conduct in connection with other circumstances and thereby reach a conclusion that such person assented to the commission of the crime, lent to it his countenance and approval and was thereby aiding and abetting the crime. [Citations.] Stated differently, circumstances may show there is a common design to do an unlawful act to which all assent, and whatever is done in furtherance of the design is the act of all, making each person guilty of the crime. [Citations.] "

In *People v. Marx* (1919), 291 Ill. 40, one defendant was driving and the second was riding in the front seat of a car while several companions were raping the prosecutrix

in the back seat. This court held that defendant could be found guilty of rape. The presence of a defendant at the commission of the crime, without disapproving or opposing it, is evidence which, together with all other circumstances, may present a jury issue as to his responsibility. 291 Ill. 40, 48.

So also we consider that defendant's continued presence here, while the victim was being beaten, coupled with his sharing in the proceeds of the crime, are sufficient to show "a common design to do an unlawful act to which all assent." *People v. Washington* (1962), 26 Ill. 2d 207, 209. See also *People v. Kessler* (1974), 57 Ill. 2d 493; *People v. Torres* (1960), 19 Ill. 2d 497; *People v. Rybka* (1959), 16 Ill. 2d 394.

The State objects to the reduction by the appellate court of defendant's sentence from one of 20 to 25 years to one of 14 to 20 years. Rule 615(b)(4) (58 Ill. 2d R. 615(b)(4)) authorizes sentence reduction, and we cannot say that under the circumstances here the appellate court abused its discretion. And section 5—8—1(c)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(c)(1)) provides that the minimum term for murder "shall be 14 years unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term."

In the circumstances of this case we find no basis for reversing the appellate court.

*Judgment affirmed.*