**Eutues WHITE, Petitioner-Appellant,**

v.

**Fred FINKBEINER, Respondent-Appellee.**

No. 77–1034.

United States Court of Appeals, Seventh Circuit.

Argued April 26, 1977.

Decided Feb. 1, 1978.

James Geis, Deputy State Appellate Defender, Kenneth L. Jones, Asst. Defender, Chicago, Ill., for petitioner-appellant.

William J. Scott, Atty. Gen., Dale M. Bennett, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.

Before TONE, BAUER and WOOD, Circuit Judges.

BAUER, Circuit Judge.

Eutues White appeals here from the district court's denial of his petition for a writ of habeas corpus, which asserts that his constitutional rights were violated by the admission at trial of his confession to a murder allegedly coerced by custodial interrogation that proceeded after he had asked to consult with an attorney. White claims that the custodial interrogation leading to his confession violated the procedural requirements announced in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that suppression of his confession was mandated for that reason alone. In addition, his petition puts in issue the voluntariness of his confession, a matter previously decided against him in the state courts. White contends that the district court erred in dismissing his petition without an evidentiary hearing and asks that we either grant him a writ of habeas corpus or remand the case for litigation of the issues raised by his petition.

For the reasons noted below, we reverse the district court's summary denial of White's petition and remand the case for further proceedings.

### I.

Following a jury trial in the Circuit Court of St. Clair County, Illinois, White was convicted of murder largely on the basis of his confession and testimony concerning his re-enactment of the crime following his confession. The admissibility of the confession at trial is the central question presented by this appeal and was the subject of extensive hearings in the state courts, a review of which follows.

Prior to trial, White moved to suppress his confession on the ground that it was "illegally and improperly obtained and procured." At the hearing on White's motion, the interrogating officers testified that they had orally advised White of his *Miranda* rights immediately prior to questioning him, that he appeared to understand those rights, and that he voluntarily waived them. The officers also testified that no force or duress was used in the course of their interrogation, and that no promises of leniency or other benefits were made to induce White's confession. The confession, which was typed up by an officer and signed by White, contained both a statement of the details of the murder and a full description of White's rights under the *Miranda* decision and written waiver thereof. White himself did not testify at the hearing, and his counsel introduced no evidence to controvert the officers' testimony. At the end of the hearing, the trial court summarily ruled that "the motion to suppress the confession is denied." No other findings of fact or conclusions of law were stated by the court.

At trial, the officers reiterated the testimony they had given at the suppression hearing, and the confession was received into evidence over the defendant's objection that there was insufficient evidence of record showing that he had been adequately advised of his rights and had voluntarily waived them. White himself testified at trial that he could not remember signing the confession or even being interrogated. All he could recall was that he had been held at a police station for several days.

On appeal, the state appellate court remanded the case so that a full evidentiary hearing on the voluntariness of White's confession could be held. The appellate court deemed the record inadequate both because the trial court had failed to make any findings of fact or conclusions of law regarding the voluntariness of White's confession, and because the record was silent as to whether White was advised of his *Miranda* rights prior to the outset of the interrogation leading to his confession. Because White's confession was obtained on the third day of incarceration following his arrest and he had been questioned on a number of occasions prior to the interrogation that resulted in his confession, the court deemed the record's silence as to White's receipt of earlier *Miranda* warnings to be a serious deficiency. Accordingly, the court remanded the case for a "new full and complete hearing on the admissibility of the [defendant's] confession." *People v. White,* 10 Ill.App.3d

914, 923, 295 N.E.2d 300, 306 (5th Dist. 1973).

At the hearing held pursuant to the appellate court's remand, the sequence of events leading to White's confession became clearer. White was arrested on May 24, 1969, early in the morning. After he arrived at the stationhouse, he was taken to see the Watch Commander, Captain William Johnson. Following a brief conversation with Johnson—the contents of which are in dispute here—White was placed in a cell, and his case was turned over to Detective Stanis for investigation.

Stanis testified at the hearing that he placed White in a lineup on the morning of the 24th and took White's palm prints that afternoon. According to Stanis, White was not interrogated about any crimes that day. On the morning of the 25th, Stanis questioned White about a murder unrelated both to the crime for which he was arrested and to the case at bar. Prior to the interrogation, Stanis orally advised White of his *Miranda* rights from a card supplied by the State's Attorney's office. White waived his rights and confessed to the murder. His confession was reduced to writing and signed by petitioner. It also contained a description and signed waiver of his *Miranda* rights. Later that afternoon, Stanis questioned White about another murder after again orally advising him of his rights prior to interrogation. White admitted committing that murder as well, and his signed confession again contained a written waiver of his *Miranda* rights. On the morning of the 26th, Stanis questioned White about the murder that resulted in the confession at issue here. The record does not reflect whether White was ever interrogated about the crime for which he was arrested.

Following Stanis's testimony, Captain Johnson, who had not testified at the initial suppression hearing, took the stand. On direct examination, Johnson said that he had advised White of his rights when the petitioner was brought to see him on the morning of his arrest. Johnson then asked White if he wished to talk about the charge for which he was arrested. According to Johnson's initial testimony, White replied that he did not want to talk and "would rather see a lawyer." At four times during his testimony, Johnson stated that White said, "[I'd] rather see a lawyer." Indeed, this was one of the reasons why Johnson believed that White fully understood his rights.

After Johnson had been excused as a witness, counsel approached the bench, and an unrecorded colloquy took place. After the colloquy, defense counsel informed the court that the defendant did not wish to testify. The State's Attorney then recalled Johnson to the stand, and he gave the following testimony:

"Q. If someone asked for a lawyer is it the practice of your department to see that they are able to get a lawyer?

A. If he had asked for a lawyer I would have given him the phone there on my desk and let him use the phone.

Q. When you said that he wanted to speak to a lawyer, do you mean that he asked, that he wanted to retain a lawyer?

A. Well, I am not sure this is what the words that he said but he didn't want to talk, so therefore I had him put back in the cell block.

Q. Well, could it have been that you just assumed when you were seeing him that he wanted a lawyer, since he didn't want to talk?

A. Yes.

Q. If he had asked for a lawyer would Detective Stanis have been notified of that fact?

A. He would have been, yes.

Q. Would any questioning have proceeded before he was able to talk to one?

A. Not to my knowledge."

On cross-examination, Johnson testified:

"Q. Captain, you testified just a moment ago that you talked to Eutues White when he first came in, to see if you knew him—what you knew about him— that he chose not to talk, that he would rather talk to a lawyer; something to that effect is what you said?

A. Well—

Q. This is important, I want to get this straight; did he specifically ask you and say, I want a lawyer; I want to talk to a lawyer?

A. No, he never asked me about he wanted to talk to a lawyer; he didn't want to talk to me, so I would assume that he would rather have a lawyer there present, but he didn't ask for one; if he had he would have used the phone there on my desk.

Q. Now, I know that a lot of what police officers testify to is based upon years of experience in a routine way of doing things; you say he has asked for a lawyer, I would have let him use my phone; can you say specifically in this case that Eutues White didn't ask for a lawyer?

A. No, he didn't ask for a lawyer."

The State's Attorney then recalled Detective Stanis, who testified that at no time during his interrogations of White did the petitioner ask to see an attorney or request that questioning be terminated. Stanis also testified that, under standard operating procedure, if White had asked Johnson to provide an attorney, he, Stanis, would have been so advised and would not have questioned White further.

Following Stanis's testimony, the defense rested, and the trial court found—without entertaining any argument from counsel—that "the defendant was properly admonished." The court then asked if counsel believed that was sufficient, and the State's Attorney replied that "the Appellate Court—they asked if the confession was found to be properly admissible in terms of voluntariness." After reading the appellate court's opinion, the trial court then stated:

"It is the finding of the Court that the confession was voluntary, proper, and admonitions given to the defendant under the *Miranda* ruling, and that the confession is admissible, all as per order signed by the Court."

Thereafter, the court entered judgment on the jury's verdict and resentenced White to not less than 66 years' and not more than 198 years' imprisonment.

White then appealed the trial court's ruling on the ground that the evidence presented at the hearing conclusively established that his initial efforts to exercise his rights to remain silent and to the assistance of counsel were frustrated by the subsequent custodial interrogations. White argued that Johnson's testimony was so contradictory and suspicious that it had to be interpreted in White's favor. A majority of the appellate court believed, however, that because White failed to proffer any evidence to contradict Johnson's final testimony that White never asked for an attorney, the trial court could accept that testimony as true, and that "finding" could not be disturbed on appeal as it was not contrary to the manifest weight of the evidence. *People v. White,* 22 Ill.App.3d 180, 184, 317 N.E.2d 323, 326 (5th Dist. 1974). Accordingly, viewing the case as presenting only a question of whether a defendant who manifested an initial unwillingness to talk could be interrogated at a later time after having been readvised of his rights and having waived them, the court determined that the officers' subsequent interrogations did not render White's confession involuntary. *Id.* at 184–85, 317 N.E.2d at 326–27. One justice dissented because he believed the record established that White had asked for an attorney during his first custodial interrogation by Captain Johnson. That being the case, the justice viewed the subsequent statements obtained in the absence of counsel to be inadmissible under *Miranda. Id.* at 187, 317 N.E.2d at 328.

On appeal, the Illinois Supreme Court adopted the dissenting justice's view of the record with respect to whether White had asked for an attorney. The court reasoned:

"Johnson's initial testimony on this point was unequivocal, both on direct examination by the prosecutor and on cross-examination by counsel for the defendant. It was only after he was recalled by the prosecution after a recess that his testimony became equivocal and he began to refer to the 'practice of the department' and the like. We are unable, therefore,

to agree with the view of the majority of the appellate court that 'Since the defendant failed to proffer any evidence to contradict Captain Johnson, the trial court could, in its discretion, accept Johnson's testimony as true * * * .' In our opinion Johnson's testimony unmistakably established that the defendant requested counsel." *People v. White,* 61 Ill.2d 288, 293–94, 335 N.E.2d 457, 461 (1975).

The court went on to view the case as presenting a question of whether the circumstances surrounding the procurement of White's confession neutralized the effect of the *Miranda* violation established by Johnson's self-contradictory testimony. The court held that,

"[w]hile the case is a close one, we are of the opinion that the effect of the procedural violation of the *Miranda* standards was sufficiently dissipated by lapse of time, repeated admonitions and other intervening events so that the defendant's confession was voluntary and was therefore properly received in evidence." *Id.* at 297, 335 N.E.2d at 463.

Following the Illinois Supreme Court's decision, White filed a petition for a writ of certiorari with the United States Supreme Court, which was denied. *White v. Illinois,* 424 U.S. 970, 96 S.Ct. 1469, 47 L.Ed.2d 738 (1976). White then sought relief in the district court by way of a petition for a writ of habeas corpus. The district court ruled that,

"[i]n light of the Illinois Supreme Court's determination after a prior special hearing, and the presumptive correctness of the facts found by that court after hearing, 28 U.S.C. § 2254(d), it is not necessary to issue an order to show cause to determine that relief is not available. It appears from this application that the petitioner is not entitled to habeas relief." *White v. Finkbeiner,* No. P CIV 76–104 at 2 (S.D.Ill.1976) (memorandum decision and order).

## II.

On appeal here, White argues that, assuming the correctness of the facts found by the Illinois Supreme Court, he is entitled to relief as a matter of law. According to White, *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), as applied by this Court in *United States ex rel. Williams v. Twomey,* 467 F.2d 1248 (7th Cir. 1972), mandates the suppression of any uncounseled statements taken from a suspect following custodial interrogation that proceeded after the suspect had requested the assistance of counsel. As the Illinois Supreme Court found that the record "unmistakably establishes that [White] requested counsel" during his initial questioning by Johnson, White concludes that he is entitled to relief as a matter of law.

The State responds: (1) that the rationale of *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), should be extended to bar petitioner from obtaining federal habeas corpus relief on the basis of alleged *Miranda* violations already fully and fairly litigated in state court proceedings; (2) that an independent examination of the state court record will reveal that White never asked for an attorney at any time while he was held in custody; (3) that, under *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), White's initial election to remain silent in response to interrogation about the crime for which he was arrested did not preclude further questioning of him about other crimes after readmonition of his rights; and (4) that, even assuming *arguendo* that White asked to see counsel before discussing the crime for which he was arrested, his confession to another offense could still be deemed voluntary and admissible in view of the subsequent waiver of his *Miranda* rights upon readmonition.

## III.

We believe that the district court erred in summarily denying White's petition as legally insufficient to state a claim to habeas relief. If it is true, as the petition alleges and the Illinois Supreme Court believed, that White asked to see an attorney on the first occasion he was questioned

when brought to the stationhouse, then the petition would appear to state a legally sufficient claim to relief under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), as applied in *United States ex rel. Williams v. Twomey*, 467 F.2d 1248, 1252 (7th Cir. 1972).[1] This is not to say, however, that White is inevitably entitled to relief even if he did ask for an attorney, for a forceful argument can be made from *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), that federal habeas relief should be unavailable to petitioners whose voluntary confessions were tainted by violation of the procedural rules announced in *Miranda*.[2] Moreover, the State's request that we either overrule or distinguish our *Williams* decision insofar as it suggests that the right to the assistance of counsel can *never* be waived by a suspect whose initial request for an attorney had not been honored is not an argument lightly to be dismissed in the circumstances of this case.[3] We leave those argu-

1. In *Miranda* the Court appears to have set out a per se rule barring any custodial interrogation of a suspect after a request for counsel has been made. The Court said:

   "If the individual states that he wants an attorney, the interrogation must cease *until an attorney is present*. At that time, the individual must have an opportunity to confer with the attorney and to have him present during *any* subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent." 384 U.S. at 474, 86 S.Ct. at 1628 (emphasis added).

   In *Williams*, at least, we have construed the Court's above remarks as requiring the suppression of any statement obtained after a request for counsel had been made and not yet honored. See 467 F.2d at 1252.

   Nothing in *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), appears to require a retreat from that view. *Mosley* is distinguishable from the case before us because here, unlike in *Mosley*, the petitioner has alleged that he not only invoked his right to remain silent during his first custodial interrogation, but also asked to see an attorney. See 423 U.S. at 101 n.7, 96 S.Ct. 321. As Mr. Justice White noted in his concurrence to *Mosley*,

   "the reasons to keep the lines of communication between the authorities and the accused open when the accused has chosen to make his own decisions are not present when he indicates instead that he wishes legal advice with respect thereto. The authorities may then communicate with him through an attorney. More to the point, the accused having expressed his own view that he is not competent to deal with the authorities without legal advice, a later decision at the authorities' insistence to make a statement without counsel's presence may properly be viewed with skepticism." 423 U.S. at 110 n.2, 96 S.Ct. at 329.

2. Such an argument assumes, of course, that a statement obtained in violation of the procedural rules announced in *Miranda* is not per se "involuntary" in traditional terms, and thus is not necessarily obtained in violation of the suspect's Fifth Amendment right not to be "compelled" to incriminate himself. Although that assumption appears to be well founded in light of the Court's discussion of *Miranda* in *Michigan v. Tucker*, 417 U.S. 433, 443–46, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), and other recent cases, any argument seeking to extend the rationale of *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), to *Miranda* violations, standing alone, must take into account the distinct purposes served by the use of an exclusionary rule in the Fourth Amendment context from the purposes served by excluding statements taken in violation of *Miranda*. See, e. g., *Stone v. Powell*, *supra* at 496–97, 96 S.Ct. 3037 (Burger, C. J., concurring); *Schneckloth v. Bustamonte*, 412 U.S. 218, 240–42, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). See generally, Chase, *The Burger Court, The Individual, and The Criminal Process: Directions and Misdirections*, 52 N.Y.U.L.Rev. 518 (1977).

   Because the applicability of the *Stone* rationale to *Miranda* claims raised in federal habeas proceedings has been argued only as an afterthought in prior appeals, we have so far declined to address the question. *United States ex rel. Henne v. Fike*, 563 F.2d 809, 812 (7th Cir. 1977). As the Supreme Court noted in *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506 n.11, 53 L.Ed.2d 594 (1977), however, the question remains open.

3. Unsolicited waivers of the right to the assistance of counsel following a request for counsel that had not yet been honored have been upheld by a number of courts. E. g., *United States v. Tafoya*, 459 F.2d 424, 427 (10th Cir. 1972); *People v. Morgan*, 67 Ill.2d 1, 7 Ill.Dec. 69, 364 N.E.2d 56 (1977). However, we are unaware of any decision, apart from the Illinois Supreme Court's in the instant case, which has upheld the validity of a waiver of the right to counsel solicited in the course of custodial interrogation initiated by the police following an accused's unhonored request for counsel. Such solicited waivers, as Mr. Justice White noted in *Mosley*, are "properly viewed with skepticism." 423 U.S. at 110 n.2, 96 S.Ct. 321

ments for another day, however, for the State disputes that White ever asked Johnson to provide counsel, and until that question of fact is reliably resolved any further discussion of the other issues raised by the parties would be premature.

We recognize, of course, that the Illinois Supreme Court concluded that White asked for an attorney, and that state court findings of fact are entitled to a presumption of correctness in this habeas proceeding. 28 U.S.C. § 2254(d). That presumption, however, generally attaches only to determinations of historical fact "made by the judge who heard the evidence, for only he is in a position to evaluate the credibility of the witnesses." *Hill v. Nelson,* 466 F.2d 1346, 1348 (9th Cir. 1972). Recitals of fact contained in a state appellate court opinion unsupported by specific findings made by the trial court judge who was able to test the credibility of witnesses by observing their demeanor in the course of direct and cross-examination are usually not dispositive of contested factual issues raised in a federal habeas proceeding. See e. g., *Elliott v. Morford,* 557 F.2d 1228, 1231–32 (6th Cir. 1977). This is certainly true at least where, as here, resolution of a controlling factual issue depends largely upon one's interpretation of the self-contradictory testimony of a single witness and an assessment of his credibility.

Unfortunately, the state trial court failed to make any finding as to whether White asked to see an attorney in the course of his initial conversation with Captain Johnson. The failure to make a "reliable and clear-cut" determination of this subsidiary issue of fact bearing on the voluntariness of White's confession regrettably necessitates a new evidentiary hearing, *Jackson v. Denno,* 378 U.S. 368, 390–91, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1963), for we are unable to ascertain from the record the factual and legal bases upon which the state trial court resolved the voluntariness issue. As the record stands, we can only speculate as to whether the court found White's confession voluntary because he never asked for counsel and waived his rights thereto, or because the court, as did the Illinois Supreme Court, believed that the confession's voluntariness was not impaired by the failure to honor a request for counsel. Thus, in the circumstances of this case, where the state trial court failed to make essential findings of historical fact and the record itself permits no reconstruction of the court's view of the underlying facts, the trial court's general finding of the voluntariness of White's confession must be set aside for purposes of this federal habeas proceeding, and the case must be remanded for relitigation of that issue and any relevant issues of subsidiary fact bearing upon it. E. g., *Outing v. North Carolina,* 344 F.2d 105, 106–07 (4th Cir. 1965).

Central to the resolution of this case on remand, of course, is the factual question of whether White asked Johnson for an attorney in the course of his initial interrogation at the stationhouse.[4] If the court finds that White did not ask for an attorney, that he was properly advised of his *Miranda* rights, that he intentionally waived them, and that his confession was voluntary, his petition should naturally be denied. On the other hand, should the court find that White did ask to see an attorney at any time he was held in custody, *Miranda* would require suppression of any statement thereafter obtained from White, at least absent a finding that he later voluntarily retracted his request for counsel and effected a knowing and intelligent waiver of his *Miranda* rights. The

(concurring opinion). It need not now be decided whether this Court should reconsider in an appropriate case the question of whether the "heavy burden" of showing the voluntariness of any such waiver is necessarily an "impossible" one. See *United States ex rel. Williams v. Twomey, supra* at 1254 (Pell, J., dissenting).

4. Our review of Captain Johnson's testimony at the second suppression hearing held by the state trial court reveals that another officer who did not testify at the hearing was present during Johnson's conversation with White. Efforts should be made to obtain his testimony at the hearing held on remand.

State, of course, would bear a "heavy" burden of showing the voluntary character of any subsequent waiver,[5] and efforts to solicit such a waiver from petitioner should be viewed with suspicion.[6] Moreover, should the court find that White asked for counsel and yet that his confession was "voluntary" in traditional terms,[7] factual findings regarding the interrogating officers' good faith and their awareness of any violations of the procedural guarantees announced in *Miranda*[8] would naturally be relevant to any disposition of the State's argument that the rationale of *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), should be extended to bar federal habeas relief in the circumstances of this case.

In any event, the court should give scrupulous care to setting out its findings of fact and conclusions of law on the record. Moreover, to insure disposition of all the relevant issues of subsidiary fact bearing on the confession's voluntariness, it would be advisable for the court to allow counsel to submit a list of contested factual issues prior to any judicial ruling.

For the reasons noted above, we reverse the district court's dismissal of White's petition and remand the case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

**5.** The fact that White was readvised of his *Miranda* rights prior to interrogation would not necessarily dispel the potentially coercive impact of the authorities' refusal to honor his initial request for counsel. Cf. *Brown v. Illinois*, 422 U.S. 590, 600–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

**6.** E. g., *United States v. Clark*, 499 F.2d 802 (4th Cir. 1974).

**7.** E. g., *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Greenwald v. Wisconsin*, 390 U.S. 519, 88 S.Ct.

1152, 20 L.Ed.2d 77 (1968); *Haynes v. Washington*, 373 U.S. 503, 513, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); *Rogers v. Richmond*, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961).

**8.** It seems from Detective Stanis's testimony at the second suppression hearing that he was unaware of any request for counsel made by White to Johnson, and that Johnson took no part in any of the interrogations of White eventually culminating in the confession at issue here.