(No. 48557.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOSE MEDINA, Appellee.

*Opinion filed April 3, 1978.*

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel, Jayne A. Carr, Donald B. Mackay, and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and Laurence J. Bolon, Joan S. Cherry, Michael R. Lewis, and Lee T. Hettinger, Assistant State's Attorneys, of counsel), for the People.

Albert J. Armonda, of Chicago, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

The defendant, Jose Medina, was indicted on two counts of murder for the killing of Cesar Jacquez on July 27, 1973. The circuit court of Cook County sustained the defendant's motion to suppress oral and written statements made by the defendant. The State appealed to the

appellate court, which affirmed the circuit court order, pursuant to Supreme Court Rule 604(a) (53 Ill. 2d R. 604). We allowed the State's petition for leave to appeal. 58 Ill. 2d R. 315.

The appellate court has adequately detailed the facts. (37 Ill. App. 3d 1029.) The pertinent facts for our analysis follow. On July 29, 1973, between 2:15 a.m. and 3:15 a.m., Officers John Deloughery and Thomas Sherry and other officers of the Chicago Police Department, in plain clothes, went to the defendant's residence to arrest him. His parents appeared at the entrance. The policemen entered, awakened the 17-year-old defendant, and placed him in their custody. He was not advised of his rights until after he was at the police station. His sister, Julie Medina, who had called the family attorney, Albert Armonda, told the defendant, as he was leaving with the police, to say nothing. He was taken to Area Four police headquarters. (The family and the attorney did not locate the defendant until late in the afternoon of July 29.) Upon arrival at the police station, still in the early morning hours, the defendant was taken to the interrogation room, advised of his constitutional rights, and questioned—apparently still handcuffed. The defendant refused to answer questions and asked for his attorney and so interrogation ceased. Around 8 a.m. another officer, Thomas O'Connor, approached the defendant. Officer O'Connor told him that several witnesses had accused him of shooting Jacquez. The defendant orally denied he shot Jacquez and only admitted driving the car. The defendant then agreed to sign a written statement, which, among other things, contained the defendant's "knowing" waiver of his constitutional rights, and his admission that he drove the car while George "Tingo" Rodriguez shot Jacquez.

The trial court concluded that the defendant had been advised of his constitutional rights and had expressed an intent to make no statement until his lawyer was present.

It then found the evidence insufficient to support a conclusion that the defendant had made a knowing and intelligent waiver of his rights—to remain silent and to have an attorney present—prior to his statements.

The issue is whether the circuit court properly suppressed the confession of the defendant. The State does not contend the findings of fact made by the trial court are contrary to the manifest weight of the evidence. Rather, it contends that both the appellate and circuit courts incorrectly applied existing law to the facts in this case. We disagree. We see the specific issue not as a mistaken application of the law but simply whether the evidence demonstrates that a knowing and intelligent waiver of his constitutional rights preceded the defendant's statements.

It is for the trial court to resolve conflicts in the evidence presented. The trial judge, having observed the demeanor of witnesses, having heard their testimony and having evaluated other evidence, is the one best equipped to determine the voluntariness of a confession. More than once this court has observed: " 'The preliminary inquiry into the voluntary nature of the confession is a question of its competency and is for the trial court. In making its decision the court is not required to be convinced beyond a reasonable doubt. [Citations.] The finding of the trial court on this question will not be disturbed unless it can be said that it is contrary to the manifest weight of the evidence. [Citations.]' " (*People v. Higgins* (1972), 50 Ill. 2d 221, 225, quoting *People v. Johnson* (1970), 44 Ill. 2d 463, 469-70. Accord, *People v. Burbank* (1972), 53 Ill. 2d 261, 266; *People v. Brooks* (1972), 51 Ill. 2d 156, 165.) Although this may be a close case, we believe a trial court properly and reasonably could have concluded the evidence insufficiently demonstrated a knowing and voluntary waiver of the defendant's rights.

Although we wonder—but do not pursue further—why

the defendant was not advised of his rights as soon as he was in the custody of the police officers at his family residence, we do not doubt that he was given his *Miranda* warnings (*Miranda v. Arizona* (1966), 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706-07, 86 S. Ct. 1602, 1612)—later at the station house. The only question is that of waiver of those rights.

> The United States Supreme Court has pointed out:
> " '[C] ourts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." (*Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023. Accord, *People v. Turner* (1973), 56 Ill. 2d 201.)

The particular facts and circumstances in this case support the trial court's findings. The defendant was only 17 years old and had no prior arrests nor previous experience with the criminal justice system. He had been awakened in the middle of the night and taken to a police station, and had been there four to five hours when Officer O'Connor, who was not aware that defendant had refused to answer questions up to then and had asked for counsel, entered the interrogation room. Although conflicting, the various testimonies evidence that Officer O'Connor told the defendant that witnesses, who accused him of doing the shooting, would be coming to the station to view him in a lineup. The defendant testified that Officer O'Connor also

told him his silence, in the face of such accusation, was an admission. The defendant denied he did the shooting, and signed a written confession which stated that he had been advised of his rights, that he waived them and that he drove the car during the shooting. These circumstances, coupled with the difficulty his family and lawyer had in locating the station where the defendant was being held, support the findings of the trial court that the defendant did not knowingly and intelligently waive his right to remain silent and have counsel present. Under the circumstances, the defendant's reported reply, "I know all that," to Officer O'Connor's apparently incompletely given *Miranda* warnings, just does not amount to an effective waiver.

In the intimidating atmosphere of an interrogation room, many otherwise hardy individuals, except those with exposure to and experience with the procedure, may succumb, even after assertions of their right to remain silent and right to have counsel, to the implication that "silence in the face of accusation is itself damning." This accounts for the Supreme Court's admonition in *Miranda*, 384 U.S. 436, 444-45, 16 L. Ed. 2d 694, 707, 86 S. Ct. 1602, 1612:

> "The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking *there can be no questioning.* Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him." (Emphasis added.) (Accord, *People v. Henenberg* (1973), 55 Ill. 2d 5, 10.)

As this court approvingly quoted in *Henenberg,* 55 Ill. 2d 5, 11, " 'The language of the Supreme Court in *Miranda*

could hardly have been more uncompromising.' "

Whether or not Officer O'Connor actually knew of the defendant's previous request for counsel, "we here must impute the notice that counsel had been requested" to Officer O'Connor. (*People v. Blanchard* (1967), 37 Ill. 2d 69, 73.) Accordingly, we conclude that the statements, in these circumstances, were in violation of *Miranda*.

The State would have us believe *People v. White* (1975), 61 Ill. 2d 288, *People v. Morgan* (1977), 67 Ill. 2d 1, and *People v. McKinley* (1977), 69 Ill. 2d 145, require reversal. We do not agree for two reasons. First, while the State asserts that *White* and *Morgan* rejected the view that once the defendant has invoked his right to remain silent he may not be questioned again until counsel is present, we are not concerned here only with the defendant's asserted right to remain silent but also his asserted right to have an attorney present. In *Michigan v. Mosley* (1975), 423 U.S. 96, 102-03, 46 L. Ed. 2d 313, 321, 96 S. Ct. 321, 326, the Supreme Court clearly distinguished between those two rights. Discussing the right to remain silent, that court ruled that *Miranda* cannot reasonably or "sensibly be read to create a *per se* proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent." But the Supreme Court added, "[*Mosley*] does *not* involve the procedures to be followed if the person in custody asks to consult with a lawyer," and then quoted *Miranda*: " 'If the individual states that he wants an attorney, the interrogation *must cease until* an attorney is present. ***' " (423 U.S. 96, 101 n.7, 46 L. Ed. 2d 313, 320 n.7, 96 S. Ct. 321, 325 n.7.) (Emphasis added.) When the statements were taken from the defendant, an attorney, requested by the defendant, was not yet present. Accord, *People v. Washington* (1977), 68 Ill. 2d 186, 192-93.

Second, the three cases above are distinguishable. In

*People v. White* (1975), 61 Ill. 2d 288, this court affirmed the trial court's conclusion that a confession, taken two days after the arrest, was properly received. In that case, this court did not see the issue as a violation of the right to counsel but as a violation of the *Miranda* procedural safeguards (failure to furnish the defendant a lawyer when he said he wanted one). It then went on to find that the effect of the violation was dissipated by the lapse of time (two days) and *several* admonitions of constitutional rights to the defendant. Besides these distinguishing features, there are others. In *White,* it was not the defendant's first exposure to the criminal justice system; before each period of questioning, he was advised of his rights and he said he understood them; the interrogations, prior to the confession (to the murder) at issue in *White,* were for unrelated offenses.

In *People v. Morgan* (1977), 67 Ill. 2d 1, the defendant, after receiving his *Miranda* warnings, said he wished to give a statement without the presence of counsel. He changed his mind and was placed alone in a room. While the interrogating assistant State's Attorney attempted to get the public defender, a police officer entered the room. The defendant volunteered to finish the statement. The policeman told the assistant State's Attorney who, again, advised the defendant of his rights. The statement was then given. This court found the confession properly received. In *Morgan*, there was no further interrogation, once the defendant expressed his desire for an attorney, and it is clear he *asked* to complete the statement. Only if we wish to second guess the trial court could we conclude Officer O'Connor's encounter with the defendant at 8 a.m. was not a resumption of the questioning. We are not willing to do this because there is enough in the record to support the trial court.

If we were to find *People v. McKinley* (1977), 69 Ill. 2d 145, controlling, again, we would have to reverse the

trial court's finding that the defendant requested counsel. Evidence in the record, again, supports the trial court. Aside from other distinguishing factors, that is the most obvious in *McKinley*: there was no request for counsel. (Moreover, the statement in *McKinley* was not even prompted by interrogation.)

"Although we agree with the People that the right to counsel may be waived [citation], we conclude that the People did not meet the 'heavy burden \*\*\* to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained counsel.' (*Miranda v. Arizona*, 384 U.S. 436, 475, 16 L. Ed. 2d 694, 724, 86 S. Ct. 1602, 1628.)" (*People v. Washington* (1977), 68 Ill. 2d 186, 194.) Hence, we agree with the appellate court that the findings of the trial court were not contrary to the manifest weight of the evidence.

*Judgment affirmed.*