79 Ill.2d 87 (1980)
402 N.E.2d 176
THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v.
LESTER RONALD ALDRIDGE, Appellant.
No. 51824.
Supreme Court of Illinois.
Opinion filed January 23, 1980.
Rehearing denied March 28, 1980.
*88 *89 Richard J. Wilson, Deputy Defender, and Charles M. Schiedel and Donald T. McDougall, Assistant Defenders, of the Office of the State Appellate Defender, of Springfield, for appellant.
William J. Scott, Attorney General, of Springfield, and C. Joseph Cavanagh, State's Attorney, of Sangamon County (Donald B. Mackay and Stuart H. Shiffman, Assistant Attorneys General, and Marc E. Towler, of the State's Attorneys Appellate Service Commission, of counsel), for the People.
Judgment affirmed.
MR. JUSTICE UNDERWOOD delivered the opinion of the court:
Lester Ronald Aldridge was found guilty of murder by a jury in the Sangamon County circuit court and was subsequently sentenced to imprisonment for a term of not less than 90 nor more than 120 years. The appellate court affirmed (68 Ill. App.3d 181), and we allowed leave to appeal.
Defendant here urges that it was a violation of his rights to assistance of counsel and to due process, presumably based on the sixth and fourteenth amendments of the United States Constitution, for the police to interrogate him in the absence of counsel and that his confession should therefore have been suppressed. Furthermore, he asserts that the trial court's admission of the confession was against the manifest weight of the evidence, which he contends demonstrated that he neither knowingly nor voluntarily waived his rights and confessed. We disagree with both contentions and affirm.
On January 17, 1976, Vicki Jo Leka was found dead from multiple gunshot wounds in a rural area of Sangamon County. Some two months later, upon seeing the defendant shooting a firearm out of the driver's window of an automobile, two Sangamon County deputy sheriffs arrested and searched him. After determining that evidence *90 seized during that search linked the defendant to the shooting of Ms. Leka, a detective interviewed the defendant in the presence of his attorney on April 26. Four days later, three officers stopped the defendant in his car on a street in Springfield. With the defendant's consent, the officers searched his car and home, and took him to the area where Ms. Leka's body had been discovered. Defendant was there questioned, and there is disputed testimony that he was threatened with force should he attempt to flee from the scene. Questioning was resumed upon return to the sheriff's office but was terminated when defendant's counsel arrived and advised his client not to answer. The testimony is controverted as to whether the warnings required by Miranda v. Arizona (1966), 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, were given to the defendant on this date. However, there is no indication from the record that the defendant requested and was denied the assistance of counsel or that any evidence was obtained from this interrogation. Following continued investigation, the defendant was arrested and incarcerated on June 14.
Defendant maintains that during June 28 questioning by the sheriff and other officers in the Sangamon County jail he repeatedly requested and was denied the assistance of counsel and that the investigating officers attempted to compel him to confess to the homicide. The officers, however, denied that defendant requested counsel or that they sought to compel a confession. Moreover, one officer testified that defendant declined the assistance of counsel when offered to him.
Because the defendant's allegedly poor personal hygiene was provoking hostile reactions from other inmates and because he was drinking more than his share of coffee and smoking cigarettes in excessive quantities, defendant was, on June 29, placed alone in a cell in the "deadlock" area of the jail, where he remained for two days. While there his consumption of coffee and cigarettes was limited to amounts which are disputed, and he, as well as some *91 other inmates, had no blankets or sheets for their mattresses. Upon release therefrom, he was transferred to the detention section until August 6, when he was returned to the general jail population.
On July 1 defendant's counsel sought to enjoin the sheriff and his deputies from questioning defendant in the absence of his attorney. The trial judge denied an injunction but noted that the hearing thus held had apprised the officers that the defendant had an attorney and did not want to be questioned further about the homicide without the assistance of his counsel.
No further questioning by the officers occurred for more than a month. On August 2 defendant informed a jailer of his desire to confess to the crime of murder with which he had been formally charged four days previously. After the investigative officers had been assembled, the defendant signed a form declaring that he was knowingly and willingly waiving his right to counsel and that his decision to make a statement and answer questions was not induced by promises, threats, pressures or coercion of any type. Even after being reminded of the previous court proceeding wherein the defendant's attorney requested that he be contacted prior to any further questioning of his client, the defendant declined an offer by the officers to contact his counsel. Defendant was also orally advised of his Miranda rights before he proceeded with his statement. During his confession defendant several times indicated a reluctance to discuss the details of the killing. In response to questions at the close of this session, the defendant again indicated that the officers were there at his request, that they had not threatened, promised, or coerced him in any way, and that his statement was voluntarily given.
On September 8 a motion to suppress this confession was filed, followed by a hearing at which psychological testimony and reports concerning the defendant's fitness for trial and ability to voluntarily and knowingly waive his Miranda rights were presented. Testimony was also given *92 by the investigative authorities who had observed the defendant at the time of his confession. The trial court ruled that defendant had knowingly, understandingly and voluntarily waived his right to counsel at the time of the August 2 confession.
Defendant urges that his confession should have been suppressed because his right to counsel was waived in the absence of the attorney whom defendant had retained and whose assistance had been requested earlier at all subsequent questioning of the defendant by police officers. It is well established, however, that the right to the assistance of counsel during interrogation may be subsequently waived despite an initial request therefor. (People v. Morgan (1977), 67 Ill.2d 1, 5, cert. denied (1977), 434 U.S. 927, 54 L.Ed.2d 287, 98 S.Ct. 411; People v. Kelley (1973), 10 Ill. App.3d 193, 197; see also People v. Medina (1978), 71 Ill.2d 254, 263; People v. Washington (1977), 68 Ill.2d 186, 194, cert. denied (1978), 435 U.S. 981, 56 L.Ed.2d 72, 98 S.Ct. 1631.) As was said in Watson v. State (1977), 35 Md. App. 381, 386, 370 A.2d 1149, 1152, "The right to have counsel present during an interrogation is a right of the defendant and not a right of defendant's counsel." To hold as irreversible an initial request for counsel "`would transform the Miranda safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests.'" (People v. Morgan (1977), 67 Ill.2d 1, 5, cert. denied (1977), 434 U.S. 927, 54 L.Ed.2d 287, 98 S.Ct. 411; quoting Michigan v. Mosley (1975), 423 U.S. 96, 102, 46 L.Ed.2d 313, 320, 96 S.Ct. 321, 325-26.) That his retained counsel was neither notified nor present when the defendant chose to forgo the assistance of counsel does not compel the invalidation of this waiver if otherwise voluntarily and knowingly made. (See Brewer v. Williams (1977), 430 U.S. 387, 405-06, 413, 51 L.Ed.2d 424, 441, 445, 97 S.Ct. 1232, 1243, 1246; People v. *93 Morgan (1977), 67 Ill.2d 1, 6, cert. denied (1977), 434 U.S. 927, 54 L.Ed.2d 287, 98 S.Ct. 411; People v. Kelley (1973), 10 Ill. App.3d 193, 197; see also Kamisar, Brewer v. Williams, Massiah, and Miranda: What is "Interrogation"? When Does it Matter?, 67 Geo. L.J. 1, 95 (1978).) In order to establish a valid waiver of the right to counsel, however, the State must prove "`an intentional relinquishment or abandonment of a known right or privilege.'" (Brewer v. Williams (1977), 430 U.S. 387, 404, 51 L.Ed.2d 424, 439, 97 S.Ct. 1232, 1242, quoting Johnson v. Zerbst (1938), 304 U.S. 458, 464, 82 L.Ed. 1461, 1466, 58 S.Ct. 1019, 1023; see also People v. Medina (1978), 71 Ill.2d 254, 263; People v. Washington (1977), 68 Ill.2d 186, 194, cert. denied (1978), 435 U.S. 981, 56 L.Ed.2d 72, 98 S.Ct. 1631; People v. Turner (1973), 56 Ill.2d 201, 205.) Moreover, this court has repeatedly emphasized that a determination regarding the voluntariness of a confession by a trial judge who has seen and heard the witnesses will not be disturbed on review unless found to be contrary to the manifest weight of the evidence. People v. Medina (1978), 71 Ill.2d 254, 258; People v. Wipfler (1977), 68 Ill.2d 158, 171; People v. Higgins (1972), 50 Ill.2d 221, 225, cert. denied (1972), 409 U.S. 855, 34 L.Ed.2d 100, 93 S.Ct. 195; People v. Johnson (1970), 44 Ill.2d 463, 469-70, cert. denied (1970), 400 U.S. 958, 27 L.Ed.2d 266, 91 S.Ct. 356.
The record here establishes that the confession was made more than a month after defendant had indicated he did not want to be questioned in the absence of his attorney, clearly distinguishing this case from those in which interrogation producing a confession closely follows the request for counsel. (Compare People v. White (1975), 61 Ill.2d 288, with People v. Turner (1973), 56 Ill.2d 201, 207, and People v. Henenberg (1973), 55 Ill.2d 5, 12.) Also, defendant's wish not to be questioned without counsel present had been respected by the authorities during that substantial interval, and it was only after defendant *94 told a jailer that he wanted to talk to the sheriff that the officers again conferred with him. In addition to meeting with defendant only after he had requested they do so, the officers advised him of his Miranda rights and he signed a form waiver; additionally, it was testified, the officers offered to contact his retained counsel, an offer which defendant declined. In our opinion there is ample evidence on which the trial court could properly have found that the State had met its burden of proving that the defendant intentionally relinquished a right known to him, and the court's finding clearly was not contrary to the manifest weight of the evidence. People v. Morgan (1977), 67 Ill.2d 1; People v. White (1975), 61 Ill.2d 288.
Defendant further asserts that the police actions, when coupled with his alleged mental illness, compel the conclusion that his waiver of the right to counsel and his confession were involuntary.
We do not find the psychiatric evidence so persuasive. Dr. Phillip Bornstein, a licensed psychiatrist, originally found the defendant to be unfit for trial and incapable of making a voluntary waiver of his Miranda rights at the time of his confession. By the time of the suppression hearing, however, and after examining the defendant in subsequent consultations, Dr. Bornstein changed his opinion and concluded that the defendant was fit for trial. On the basis of a psychological evaluation performed at the request of defendant's family in March of 1977, the psychologist's report finding the defendant unfit to stand trial was admitted into evidence without objection. After periodic consultation conducted during the pretrial period another licensed psychiatrist, Dr. E. Zilinskas, consistently found that the defendant was competent when the crime was committed, was fit to stand trial, and had changed his defense on the advice of counsel. This conflicting psychiatric evidence is readily distinguishable from the compelling evidence of insanity presented in Blackburn v. Alabama (1960), 361 U.S. 199, 208, 4 L.Ed.2d 242, 249, 80 S. *95 Ct. 274, 281, relied upon by defendant. When considered with the testimony of the officers who had observed the defendant at the time his confession was made and who testified that the defendant appeared to comprehend the Miranda warnings read to him and did not seem to be particularly nervous, confused or incompetent when confessing to the killing, it is clear that the trial judge's findings that the defendant had knowingly and voluntarily waived his right to counsel and that the confession was admissible were not contrary to the weight of the evidence. See People v. Hester (1968), 39 Ill.2d 489; People v. Cooper (1975), 30 Ill. App.3d 326, cert. denied (1976), 425 U.S. 994, 48 L.Ed.2d 818, 96 S.Ct. 2206; People v. Reed (1972), 8 Ill. App.3d 977.
Finally, the defendant maintains that the failure of the interrogating officers to heed his attempts to discontinue answering questions concerning details of the murder rendered his confession inadmissible. While a defendant has the right to terminate an interrogation through an assertion of his right to remain silent (Michigan v. Mosley (1976), 423 U.S. 96, 104-05, 46 L.Ed.2d 313, 322, 96 S.Ct. 321, 327; Miranda v. Arizona (1966), 384 U.S. 436, 474, 16 L.Ed.2d 694, 723, 86 S.Ct. 1602, 1627-28; People v. Washington (1977), 68 Ill.2d 186, 191, cert. denied (1978), 435 U.S. 981, 56 L.Ed.2d 72, 98 S.Ct. 1631), it does not appear from the record that the defendant did so here. Rather than attempting to terminate the questioning altogether, defendant merely resisted answering questions concerning particular details of the offense to which he had confessed. Throughout the remainder of the 24-minute period, the defendant responded to other questions without apparent reluctance. Clearly the circumstances here reveal no violation of the defendant's privilege against self-incrimination.
The judgment of the appellate court is accordingly affirmed.
Judgment affirmed.