THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RANDY CROWDER, Defendant-Appellee.

Fifth District   No. 5—85—0167

Opinion filed May 1, 1986.

JONES, J., dissenting.

John Coady, State's Attorney, of Taylorville (Kenneth R. Boyle, Stephen E. Norris, and Vito A. Mastrangelo, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Gregory B. Grigsby, Public Defender, of Taylorville, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

The State appeals from an order of the circuit court of Christian County granting defendant's pretrial motion to suppress certain statements he made to the police while in custody. We affirm and remand.

Defendant, Randy Crowder, was charged with burglary and theft. During an initial arraignment proceeding on January 25, 1985, defendant requested a public defender and one was appointed. Arraignment was continued. The public defender represented defendant at a February 6, 1985, proceeding, which included arraignment and a preliminary hearing. Counsel also represented defendant at a hearing on his motion for reduction of bond on February 25, 1985. Thereafter and prior to trial defendant moved for the suppression of certain statements that he had made to police officers in the absence of counsel on the evening of February 25, 1985, while he was incarcerated. In his motion defendant claimed that the statements had been elicited in violation of his constitutional rights under the fourth, fifth, sixth, and fourteenth amendments. Defendant maintained that he had not voluntarily, knowingly, and intelligently waived his *Miranda* rights and that he had not knowingly or voluntarily consented to the absence of counsel. Following a hearing the trial court granted defendant's motion, and the State has appealed from the order granting the motion.

At the hearing defendant called as witnesses Lieutenant David Childers, a policeman for the city of Taylorville, and Deputy Roy Wilbur of the Christian County sheriff's office. Childers testified that he and Deputy Wilbur had spoken with defendant at about 7:30 or 8 p.m. on the date in question in the investigator's office of the jail where defendant was incarcerated. The witness had wanted to talk with defendant about the burglary with which he was charged. Prior to discussing the burglary, Childers told defendant what he wanted to discuss with him and advised him of his *Miranda* rights. Childers testified that he asked defendant if he understood "each and every one of those rights and he said yes, that he did, he knew them." The witness stated that defendant did not sign a waiver of his rights because Childers did not have a waiver form with him at the time. Childers knew, he said,

that the public defender was representing defendant when he spoke with him. After informing defendant of his rights, Childers showed defendant the statement of Gary Lowis, another person involved in the matter. Defendant read the statement and said that it was untrue, that the truth was the opposite of Lowis' statement that he and defendant had been at the scene of the crime together and that defendant had been the one who actually entered the building in question. Defendant, on the other hand, said that Lowis was the one who had entered the building.

Deputy Wilbur testified similarly. He stated that defendant had neither asked the police to speak with him nor indicated that he wanted to talk with anyone about the burglary. Asked on direct whether defendant had done "anything other than indicate that he understood his rights," the witness answered, "I believe he said he understood 'em, to the best of my knowledge at that time." The witness testified that defendant had not said that he "waive[d]" his rights. He testified further that no one had attempted to telephone the public defender's office to advise him that questioning of defendant was going to be undertaken. The witness said that he "was not really questioning him, Lieutenant Childers was," because, in part, defendant had an attorney. On cross-examination the witness testified that he had been present during the entire discussion with defendant and that at no time had he heard defendant ask that his attorney be present. Asked whether defendant had indicated "in any fashion whether it be by physical gesture or by verbal exclamation that he was incapable of understanding his Miranda Rights as they were recited to him by Lieutenant Childers," the witness responded, "No sir, he said he understood 'em."

Testifying on his own behalf, defendant stated that he had not asked the police to speak with him and that he had not known the police were coming to speak to him. On cross-examination he said that he has no problem understanding the English language and that at no time during the conversation in question had he asked that his attorney be present.

The State called Lieutenant Childers as a witness, who testified that there was no indication "whatsoever," whether by physical gesture or by verbal expression, that defendant did not understand what he was telling defendant when he gave him the *Miranda* warnings. The trial court asked the witness, "Did you say anything to Mr. Crowder about asking if he would like to have his attorney present?" The witness answered, "In those particular words, no, I didn't, Judge, it was just—when I read—when I recited his rights to him, you know, about he did have the right to have an attorney present."

At the conclusion of the hearing on the motion to suppress the trial court remarked:

> "Well on the basis of the citation that has been presented [*Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880] and the law that governs in this kind of case it is of course as you say, the right of the defendant himself to have counsel, it's not the right of a counsel to be present, it's the right of a defendant to have his counsel present.
>
> But nevertheless that is a right that the defendant must specifically waive and the mere fact that he answers questions or the mere fact that he was advised of his Miranda Rights and they proceeded to question him and he may respond to those questions is not a specific waiver of his right to counsel; therefore I am going to grant the motion in this cause and anything, any evidence that proceeds from the questioning on, if it was, whatever day it was, the 25th or the 27th of February, 1985, any evidence that was produced or is covered therefrom is suppressed."

In its written order granting the motion to suppress, the trial court stated, "Any evidence produced from this interrogation on February 27, 1985[,] or discovered or produced as a result thereof is suppressed for the reason that Def. did not specifically waive the right to have his counsel present at the time of this interrogation initiated by the Taylorville Police."

The issue we address is whether defendant's sixth amendment right to counsel was violated by this interrogation. The State concedes that defendant's right to counsel under the sixth amendment had attached (see *United States v. Gouveia* (1984), 467 U.S. 180, 187, 81 L. Ed. 2d 146, 153, 104 S. Ct. 2292, 2297), and that defendant had a right to have counsel present during any interrogation. The State argues, however, that defendant waived this right when he made statements to the police after being read his *Miranda* rights.

The United States Supreme Court very recently decided *Michigan v. Jackson* (1986), 475 U.S. ___, 89 L. Ed. 2d 631, 106 S. Ct. 1404, which we find controlling of the case *sub judice*. In *Jackson*, police questioned two defendants after they had requested counsel at arraignment proceedings. The Court, after analyzing the defendants' sixth amendment rights to counsel, held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." (*Michigan v. Jackson* (1986), 475 U.S. ___, ___, 89 L. Ed. 2d 631, ___, 106 S. Ct. 1404,

1411.) The majority expressly applied to *sixth amendment* cases the reasoning of *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880, a decision analyzing waiver of a defendant's *fifth amendment* right to assistance of counsel during custodial interrogation. In *Edwards,* the court held that an accused person in custody who has "expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." (*Edwards v. Arizona* (1981), 451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 386, 101 S. Ct. 1880, 1885.) This is a bright-line rule. (*Solem v. Stumes* (1984), 465 U.S. 638, 646, 79 L. Ed. 2d 579, 589, 104 S. Ct. 1338, 1343.) Once a suspect has invoked the right to counsel, any subsequent conversation must be initiated by him. 465 U.S. 638, 641, 79 L. Ed. 2d 579, 586, 104 S. Ct. 1338, 1340.

■■ The court in *Jackson* found that the reasoning of *Edwards* applies with greater force in a sixth amendment context than in a fifth amendment setting. The Court reasoned that it makes little sense to afford relief from further interrogation to a defendant who asks a police officer for an attorney, but permit further interrogation of a defendant who makes the same request to a judge. (*Michigan v. Jackson* (1986), 475 U.S. ___, ___ n.7, 89 L. Ed. 2d 631, ___ n.7, 106 S. Ct. 1404-10 n.7.) The sixth amendment guarantees an accused, after the initiation of formal charges, the right to rely on counsel as a "medium" between him and the State. This right is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a State agent. (*Maine v. Moulton* (1985), 474 U.S. ___, ___, 88 L. Ed. 2d 481, 496, 106 S. Ct. 477, 487.) As Justice Douglas has queried, "[W]hat use is a defendant's right to effective counsel at every stage of a criminal case if, while he is held awaiting trial, he can be questioned in the absence of counsel until he confesses?" *Spano v. New York* (1959), 360 U.S. 315, 326, 3 L. Ed. 2d 1265, 1273, 79 S. Ct. 1202, 1209 (Douglas, J., concurring).

■■ The prohibition delineated in *Moulton* is the precise safeguard which the police ignored in the present case. A public defender had been appointed for defendant at defendant's request and had represented defendant at his preliminary hearing and arraignment. The attorney had also represented defendant at a hearing on a motion for reduction of bond, which took place on February 25, 1985, the same day the statements in question were elicited from defendant. The police admitted they knew defendant had an attorney representing him, but

they still initiated interrogation. Defendant in no way initiated the conversation. Thus, the holding in *Jackson* requires us to find any waiver of defendant's right to counsel invalid, and consequently the statements must be suppressed.

We acknowledge that in the case *sub judice* defendant had the benefit of representation of counsel at his various pretrial hearings which occurred prior to the complained of questioning, while the defendants in *Jackson* had no opportunity to consult with counsel or have counsel act for them in any way before the unconstitutional interrogation. This difference is without effect on our analysis of defendant's sixth amendment rights. Once defendant makes a request for counsel, "we presume that the defendant requests the lawyer's services at every critical stage of the prosecution," and this right applies not "only to representation in formal legal proceedings." (*Michigan v. Jackson* (1986), 475 U.S. ___, ___, 89 L. Ed. 2d 631, ___, 106 S. Ct. 1404, 1409.) If the right we must protect is the right to have counsel serve as a "medium" between defendant and the State, it would be anomalous to argue that because counsel in fact has served as a "medium" for defendant in various proceedings, that the police can initiate questioning in the absence of counsel. A defendant who has in fact relied on counsel as a "medium" in dealing with the State should have no less protection than a defendant who has asserted the right but has yet to have counsel act on his behalf. Moreover, *Jackson* establishes a bright-line rule which invalidates any waiver of a defendant's right to counsel in a police-initiated interrogation after a defendant has asserted his sixth amendment rights at an arraignment or similar proceeding. *Michigan v. Jackson* (1986), 475 U.S. ___, ___, 89 L. Ed. 2d 631, ___, 106 S. Ct. 1404, 1410.

This rule also requires us to reject the State's contention that defendant waived his right to counsel when he made statements to the police after being read his *Miranda* rights. The court in *Jackson* held that even a written waiver is insufficient to justify police-initiated interrogation after a request for counsel. (*Michigan v. Jackson* (1986), 475 U.S. ___, ___, 89 L. Ed. 2d 631, ___, 106 S. Ct. 1404, 1410.) While the State's argument in the present case must fail because the interrogation was police initiated, we note there was no express waiver of any kind here, written or oral.

Because we find defendant's sixth amendment right to counsel was violated, we do not address the question of whether defendant's rights under the fifth amendment as interpreted in *Edwards* may also have been violated.

For the foregoing reasons, the order of the circuit court of Chris-

tian County granting defendant's motion to suppress is affirmed and the cause remanded for further proceedings not inconsistent with this opinion.

Affirmed and remanded.

WELCH, J., concurs.

JUSTICE JONES, dissenting:
I respectfully dissent.

I cannot, and do not, quarrel with the rules that the majority ascribes to *Edwards v. Arizona* and *Michigan v. Jackson*, which stand for the proposition that once an accused requests counsel, all interrogation must cease until counsel is furnished or the accused himself or herself initiates any further exchanges with the police. *Maine v. Moulton*, relied upon by the majority, seems to have little or no application to the instant case in view of its facts. In *Maine v. Moulton*, which is similar on its facts to *Massiah v. United States* (1964), 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199, the police had equipped a codefendant with a body-wire transmitter to record what was said at a meeting prior to trial between the defendant and the codefendant. The meeting took place in the absence of counsel, and the defendant did not know the conversation was being recorded. Certainly he had not been advised by police of his right to counsel immediately prior to the recording of the conversation in which he made incriminating remarks later used at his trial. Unlike *Edwards v. Arizona* and *Michigan v. Jackson*, however, the instant case does not turn on the defendant's right to counsel, for *defendant did in fact have counsel* and, beyond that, had appeared in court with his attorney the very day upon which the further questioning of defendant without the presence of his attorney took place. The issue here is whether defendant waived his right to have his attorney present during the interrogation in question.

The majority gives scant, if any, attention to the waiver question that is decisive of this case. The Supreme Court expressly recognized in *Edwards v. Arizona* itself that once counsel is furnished, the accused may waive the right to have counsel present during an interrogation and, further, that the waiver of the right may be inferred from the circumstances as well as express.

The majority seems to hold that an accused who has had counsel made available to him cannot thereafter be interrogated by the authorities in the absence of counsel unless the accused initiates such communication and knowingly and voluntarily waives the right to have counsel

present. That, however, is not the holding of *Edwards*.

It is well established that the right to the assistance of counsel during interrogation may be subsequently waived despite an initial request therefor. (*People v. Aldridge* (1980), 79 Ill. 2d 87, 402 N.E.2d 176.) In *Aldridge* four days after the defendant had been formally charged with the crime of murder and while he was incarcerated, he expressed to a jailer the wish to confess to having committed the crime and, having had been advised of his *Miranda* rights and having signed a waiver of them, did so in the absence of counsel. About a month earlier his attorney had sought to enjoin the sheriff and his deputies from questioning the defendant in the absence of counsel. The trial court had denied an injunction but had noted that the hearing thus held had apprised the officers that the defendant had an attorney and did not want to be questioned further about the homicide without the assistance of his counsel. On review the defendant urged that his confession should have been suppressed because his right to counsel had been waived in the absence of the attorney whom defendant had retained and whose assistance had been requested earlier at all subsequent questioning of the defendant by police officers. In *Aldridge* the court reasoned:

> "As was said in *Watson v. State* (1977), 35 Md. App. 381, 386, 370 A.2d 1149, 1152, 'The right to have counsel present during an interrogation is a right of the defendant and not a right of defendant's counsel.' To hold as irreversible an initial request for counsel ' "would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests." ' *People v. Morgan* (1977), 67 Ill. 2d 1, 5, *cert. denied* (1977), 434 U.S. 927, 54 L. Ed. 2d 287, 98 S. Ct. 411; quoting *Michigan v. Mosley* (1975), 423 U.S. 96, 102, 46 L. Ed. 2d 313, 320, 96 S. Ct. 321, 325-26.) That his retained counsel was neither notified nor present when the defendant chose to forgo the assistance of counsel does not compel the invalidation of this waiver if otherwise voluntarily and knowingly made. (See *Brewer v. Williams* (1977), 430 U.S. 387, 405-06, 413, 51 L. Ed. 2d 424, 441, 445, 97 S. Ct. 1232, 1243, 1246; *People v. Morgan* (1977), 67 Ill. 2d 1, 6, *cert. denied* (1977), 434 U.S. 927, 54 L. Ed. 2d 287, 98 S. Ct. 411; *People v. Kelley* (1973), 10 Ill. App. 3d 193, 197; see also Kamisar, *Brewer v. Williams, Massiah,* and *Miranda: What is 'Interrogation'? When Does it Matter?*, 67 Geo. L.J. 1, 95 (1978).)" *People v. Aldridge* (1980), 79 Ill. 2d 87, 92-93, 402 N.E.2d 176, 179.

In order to establish a valid waiver of the right to counsel, the

State must prove " 'an intentional relinquishment or abandonment of a known right or privilege' " (*Brewer v. Williams* (1977), 430 U.S. 387, 404, 51 L. Ed. 2d 424, 439, 97 S. Ct. 1232, 1242, quoting *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023). As was said in *Edwards v. Arizona* (1981), 451 U.S. 477, 482, 68 L. Ed. 2d 378, 385, 101 S. Ct. 1880, 1884, quoting *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023, a knowing relinquishment or abandonment of a known right or privilege depends in each case " 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' " A court may find an intelligent and understanding rejection of counsel in situations where the defendant did not expressly state as much (*North Carolina v. Butler* (1979), 441 U.S. 369, 60 L. Ed. 2d 286, 99 S. Ct. 1755); an express waiver of the right to counsel is not necessary (*People v. Brooks* (1972), 51 Ill. 2d 156, 281 N.E.2d 326). The test is that there be a showing of a knowing intent to speak without counsel. (*People v. Brooks* (1972) , 51 Ill. 2d 156, 281 N.E.2d 326; *People v. Cozzi* (1981), 93 Ill. App. 3d 94, 416 N.E.2d 1192.) Once the defendant has been informed of his rights and indicates that he understands those rights it would seem that his choosing to speak and not requesting a lawyer is sufficient evidence that he knows his rights and chooses not to exercise them. (*People v. Brooks* (1972), 51 Ill. 2d 156, 281 N.E.2d 326; *People v. Cozzi* (1981), 93 Ill. App. 3d 94, 416 N.E.2d 1192.)

In this case the defendant in his brief states that "[t]he facts in this case are largely not in dispute. The facts are essentially this [sic]: *** (5) The defendant's Miranda rights are given to him, he indicates that he understands them, but, no waivers are signed, nor does the defendant indicate that he wishes to waive his rights." The defendant was informed of his rights, indicated that he knew and understood them, and chose to speak. He did not ask that counsel be present. There was no evidence whatever of threats, coercion, intimidation, or promises of leniency. Nor was the defendant unfamiliar with the criminal justice system; his motion for reduction of bail filed February 21, 1985, lists a total of six convictions for (1) criminal damage to State-supported property, (2) theft over—criminal damage, (3) contempt of court, (4) illegal delivery to a minor, (5) battery, and (6) criminal damage to property. His several convictions support the conclusion that the defendant understood his rights and voluntarily waived them. See *People v. Williams* (1984), 124 Ill. App. 3d 734, 464 N.E.2d 1176.

I would reverse.