THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARVIN HOSKINS, Defendant-Appellant.

First District (5th Division)   No. 85—2126

Opinion filed April 8, 1988.

Stanley L. Hill and Lawrence E. Sommers, both of Stanley L. Hill & Associates, P.C., of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and John A. Gasiorowski, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

Defendant, Marvin Hoskins, appeals from his convictions for murder and unlawful restraint after a jury trial. He is presently serving concurrent sentences of 60 years for murder and three years for unlawful restraint. Numerous errors alleged in this appeal are based on

the following facts.

On January 4, 1983, defendant was arrested and charged with aggravated battery in the beating and shooting of Linda Chappell. Defendant retained Stanley L. Hill as counsel and was subsequently released on bond. As a result of her injuries, Chappell died on January 19, 1983. Defendant was rearrested and charged with various counts of murder, felony murder, feticide, aggravated kidnapping, unlawful restraint, and armed violence. Defendant's first trial was declared a mistrial because of jury deadlock. Prior to his second trial, the State nol-prossed all of the charges except for intentional murder, strong probability murder, unlawful restraint, and felony murder based on aggravated kidnapping. After the State nol-prossed the aggravated kidnapping count, it was permitted to amend the felony murder count to insert unlawful restraint as the underlying felony. Defendant objected to this amendment.

The record discloses that defendant, his "common-law" wife, Jeanne Claudette Brown (hereinafter referred to as defendant's wife), and the victim, Linda Chappell, attended a party in the early morning of January 4, 1983, at which there occurred excessive use of alcohol and drugs. Chappell, who was approximately seven months pregnant and had previously dated defendant, was physically abused at the party. Defendant, his wife, and Larry Sole left the party. Chappell was forced to go with them and was placed in the trunk of a car. Around 7 a.m. the police found Chappell lying on a sidewalk across the street from a vacant building. She was bruised and had been shot several times.

The police officer who found Chappell testified that she was able to indicate her name and partial address, and that she was shot in the nearby vacant building by defendant. She later told hospital personnel that she had been shot by two separate guns. Defendant alleges that Sole was the instigator and actual shooter and that he (defendant) went along because of his own fear of Sole and of what Sole might do to Chappell. Defendant was arrested later on January 4 and formally charged with aggravated assault. He retained Hill as counsel and was released on bond. After Chappell died on January 19, defendant was rearrested and later confessed to participating in the murder.

A hearing was held on defendant's motion to suppress statements made after his second arrest. Detectives Thomas Brankin and John Smith, Assistant State's Attorney Al Petrocelli, attorney Hill, and defendant testified at the hearing. Petrocelli stated that he received a call around 8:30 p.m. on January 21 asking him to go to Area 3 Headquarters to aid in the investigation of Chappell's murder. He met De-

tectives Brankin and Smith there and attempted to interrogate defendant's wife, who had been arrested earlier that afternoon. When she refused to cooperate, the three men left Area 3 and went to District 7, where defendant was locked up. After advising defendant of his *Miranda* rights, Petrocelli, Brankin, and Smith interviewed him for 10 to 15 minutes in the processing room, which is a little room immediately outside the cells within the lockup area. Defendant responded with indefinite answers and the three men moved approximately 10 feet to 15 feet away to a desk situated at the end of a hallway in a direct line with defendant's cell. Petrocelli testified that it was approximately five minutes, at the most, before defendant called them back and subsequently confessed.

Thereafter, defendant was taken to Area 3, where he gave a written and signed statement. The detectives' testimony was similar in most respects. Both officers said that they had never received any message from the desk sergeant not to question defendant, and they both testified that defendant's formal statement was taken in the Area 3 interrogation room at the same time that his wife was still being held in one of the side rooms, but that defendant did not see his wife. Detective Smith testified that he may have told defendant that his wife was in custody but he didn't recall defendant's inquiring about his children or if defendant gave any reason for confessing.

Defendant testified that he was a drug addict and showed his "track marks" to the court. He said that when he was arrested in his home on January 19, he went into the bathroom and shot up with a mixture of cocaine and heroin before being taken to Area 3 Headquarters. Later that day, he spoke with his attorney, Hill, by telephone and was advised to make no statements, after which Brankin and Smith tried to interrogate him. Defendant claimed that he was beaten by an officer twice—in the early mornings of January 20 and 21. Defendant called his attorney on January 20 and told him about the beating. Hill visited him in the District 7 lockup that evening. Defendnt also claimed that he was suffering from severe drug withdrawal when Petrocelli, Brankin, and Smith came to see him on the evening of January 21. The investigators testified that defendant showed no signs of illness. Defendant admitted giving some "round about answers" to their questioning. He also stated that Detective Smith told him that his wife was locked up. When they left the processing room, defendant said that he could hear the men talking at the desk about calling the child welfare department to take his four young children who were home alone. He then called his wife's mother from a phone in the lockup area and was told that his wife had been arrested and the

children were alone. He then called the officers back and claims that the detectives told him that if he would talk, his wife would be released to take care of the children. He then gave a statement. Defendant also testified that when he was taken to the Area 3 interrogation room, he saw his wife crying in the corridor.

Attorney Hill testified that when he talked to defendant by telephone on January 19, he told Sergeant Engler, the desk sergeant, that defendant was not to be interrogated and that the sergeant said that he would relay the message. Hill further stated that he told the officer whom defendant had pointed out as the man who beat him to stop beating and interrogating his client. Hill also reiterated these instructions to the desk sergeant.

The trial court found that Hill's visits to defendant and his admonitions to refrain from questioning him had occurred but that defendant's testimony was unbelievable. The court further stated that the police had no duty to scrupulously honor defendant's sixth amendment rights after the victim died and, in consideration of the totality of the circumstances, the State had met its burden of showing waiver of the right to counsel. Thus, defendant's statements were admitted in evidence at trial.

Defendant raises the following issues on appeal: (1) whether the trial court erred in allowing the State to amend the indictment, thereby misleading the jury as to the offense of felony murder; (2) whether defendant's sixth amendment right to counsel was violated; (3) whether the trial court improperly refused to instruct the jury on the affirmative defenses of compulsion and necessity; (4) whether the trial court erred in admitting the victim's statements as a spontaneous declaration; (5) whether the trial court's non-Illinois Pattern Jury Instructions (IPI) instruction regarding "no negative inference" was error; (6) whether the State's use of peremptory challenges denied defendant a fair and impartial trial; and (7) whether alleged prosecutorial misconduct prejudiced defendant.

We shall first address defendant's contention that his sixth amendment right to counsel was violated and that as a result, his confession should have been suppressed.

■ The sixth amendment guarantees a defendant the right to legal representation during interrogation once adversarial proceedings have commenced against him. (*Massiah v. United States* (1964), 377 U.S. 201, 205, 12 L. Ed. 2d 240, 250, 84 S. Ct. 1199, 1202; *Kirby v. Illinois* (1972), 406 U.S. 682, 688, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1881.) It is clear that defendant's sixth amendment right to counsel had attached at the time of his confession. Prior to Chappell's

death, defendant had been formally charged with aggravated battery against her. After Chappell died as a result of her injuries, defendant was rearrested. Subsequent to his second arrest, defendant spoke with his attorney (Hill) and was advised to make no statements to the police without Hill's presence. Additionally, Hill several times instructed police officers not to interview defendant. In spite of these facts, Detectives Brankin and Smith and Assistant State's Attorney Petrocelli did interview defendant. Detective Smith testified that during this 10- to 15-minute interview he may have told defendant that his wife was in custody. Approximately 5 to 10 minutes after the detectives and Petrocelli ceased their questioning, defendant asked to speak with them and, after receiving his *Miranda* rights, confessed.

The State contends that defendant knowingly and intentionally waived his sixth amendment right to counsel. Defendant asserts that the issue of waiver is irrelevant because any police-initiated interrogation without counsel after assertion of the right invalidates any subsequent waiver. We find that defendant did not waive his sixth amendment right to counsel for the following reasons.

■ ■ Defendant relies on the recent United States Supreme Court case of *Michigan v. Jackson* (1986), 475 U.S. 625, 89 L. Ed. 2d 631, 106 S. Ct. 1404, for his argument that after a defendant has asserted his sixth amendment right to counsel, any waiver of that right during a police-initiated interrogation is invalid. *Jackson* is the most recent of a progression of cases to consider the sixth amendment right to counsel as separate and distinct from the fifth amendment right to counsel. The right to counsel stemming from the fifth amendment is designed to protect against compelled self-incrimination and attaches when an accused requests counsel at a custodial interrogation, whereupon all questioning must cease until counsel has been made available to the accused. (*Miranda v. Arizona* (1966), 384 U.S. 436, 473-74, 16 L. Ed. 2d 694, 723, 86 S. Ct. 1602, 1612.) By contrast, the express sixth amendment right to counsel operates to ensure a fair trial. (*United States v. Gouveia* (1984), 467 U.S. 180, 188-89, 81 L. Ed. 2d 146, 154, 104 S. Ct. 2292, 2298; *Brewer v. Williams* (1977), 430 U.S. 387, 398, 51 L. Ed. 2d 424, 436, 97 S. Ct. 1232, 1239.) It attaches at or after the initiation of adversary judicial proceedings, which may be occasioned by way of formal charge, preliminary hearing, indictment, information, or arraignment. *Kirby v. Illinois* (1972), 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1882.

The *Jackson* court held that "if police initiate interrogation after a defendant's assertion, *at an arraignment or similar proceeding,* of

his right to counsel, *any waiver* of the defendant's right to counsel for that police-initiated interrogation is invalid." (Emphasis added.) (*Michigan v. Jackson* (1986), 475 U.S. 625, 636, 89 L. Ed. 2d 631, 642, 106 S. Ct. 1404, 1411.) In a footnote, the court referred to the methods of initiating judicial proceedings set forth in *Kirby v. Illinois* (1972), 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877, as signalling attachment of the right. (*Jackson*, 475 U.S. at 629-30 n.3, 89 L. Ed. 2d at 638 n.3, 106 S. Ct. at 1407 n.3.) Since defendant had been formally charged with assault of the victim his rearrest for her murder was based on the same underlying situation and was thus sufficiently related to afford sixth amendment protection during questioning about the murder. Accordingly, it is clear that the State's attempt to distinguish the present case on the basis that defendant had not yet been arraigned on the murder charge is inadequate.

The sixth amendment right to counsel prohibits law enforcement officers from "deliberately elicit[ing]" incriminating information from a defendant after formal charges have been filed. (*Massiah v. United State* (1964), 377 U.S. 201, 206, 12 L. Ed. 2d 246, 250, 84 S. Ct. 1199, 1203.) The court in *Maine v. Moulton* (1985), 474 U.S. 159, 176, 88 L. Ed. 2d 481, 496, 106 S. Ct. 477, 487, clarified *Massiah* by holding that any attempt by the State to deliberately elicit incriminating information from an accused or to knowingly exploit an opportunity to confront the accused without counsel being present violates the sixth amendment. There is no doubt that the first "interview" of defendant in the present case countermanded the precepts enunciated in the above cases, thus violating his constitutional right. However, the State asserts that defendant waived this right by calling the police officers and assistant State's Attorney back and confessing after receiving his *Miranda* rights. We disagree.

■■ ■ It is true that the sixth amendment right to counsel can be waived. Such a waiver must be a knowing and intelligent relinquishment of a constitutional right and a court should "indulge every reasonable presumption against waiver of fundamental constitutional rights." (*Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1024.) The State has the burden of establishing a valid waiver, which requires showing not only comprehension of the right but also a relinquishment of it. (*Brewer v. Williams* (1976), 430 U.S. 387, 404, 51 L. Ed. 2d 424, 440, 97 S. Ct. 1232, 1242.) Doubts must be resolved in favor of protecting the constitutional claim. (*Michigan v. Jackson* (1986), 475 U.S. 625, 633, 89 L. Ed. 2d 631, 640, 106 S. Ct. 1404, 1409.) Moreover, a defendant's request for counsel is an extremely important fact when determining the validity of a

subsequent waiver in response to police-initiated interrogation. *Jackson*, 475 U.S. at 633 n.6, 89 L. Ed. 2d at 640 n.6, 106 S. Ct. at 1409 n.6.

In effect, the Court in *Jackson* extended the "bright-line rule" regarding fifth amendment waivers as set forth in *Edwards v. Arizona* (1981), 451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 386, 101 S. Ct. 1880, 1884-85, to also encompass the waiver of the sixth amendment right to counsel, *i.e.*, written waivers are insufficient to justify police-initiated interrogation after a sixth amendment request for counsel. (*Michigan v. Jackson* (1986), 475 U.S. 625, 635, 89 L. Ed. 2d 631, 642, 106 S. Ct. 1404, 1410-11.) The *Jackson* court noted that "the reasons for prohibiting the interrogation of an uncounseled prisoner who has asked for the help of a lawyer are even stronger after he has been formally charged with an offense than before." *Jackson*, 475 U.S. at 631, 89 L. Ed. 2d at 639, 106 S. Ct. at 1408.

Once a defendant becomes an accused, the sixth amendment right to counsel attaches and continues for as long as the individual remains accused. (*United States ex rel. Espinoza v. Fairman* (7th Cir. 1987), 813 F.2d 117, 125.) In the present case, the State argues that the *Miranda* warnings given to defendant before his questioning enabled him to intelligently waive his right to counsel by making him aware that he could terminate the questioning by demanding the presence of his counsel and, that by not exercising this option, defendant effectively waived the right. However, a similar argument was rejected by the court in *Jackson*, which noted that it must give a broad rather than narrow interpretation to defendants' requests for counsel and would therefore presume that defendants had invoked the full extent of their sixth amendment right so as to include representation of counsel at any subsequent interrogations. Therefore, we conclude that defendant's initial assertion of his right to have counsel present during interrogation was in full effect at the time of his interrogation by the State and there was no necessity for him to reassert that right.

The *Jackson* holding creates a problem regarding the standard to be used in determining waiver of the sixth amendment right to counsel. That issue is now pending before the United States Supreme Court in a case granted *certiorari* from the Illinois Supreme Court. (*Patterson v. Illinois* (1987), ___ U.S. ___, 98 L. Ed. 2d 186, 108 S. Ct. 227; *People v. Thomas* (1987), 116 Ill. 2d 290, 507 N.E.2d 843; see also Chicago Daily Law Bulletin, March 22, 1988, at 1 (synopsis of defendant's arguments before Supreme Court).) The question of whether a waiver of the sixth amendment right to counsel should be determined by applying a higher standard than that used in fifth

amendment waiver cases has generated consideration discussion. (See, e.g., *People v. Bladel* (1984), 421 Mich. 39, 365 N.W.2d 56 (discussion of cases and commentaries), aff'd sub nom. *Michigan v. Jackson* (1986), 475 U.S. 625, 89 L. Ed. 2d 631, 106 S. Ct. 1404.) Some courts have interpreted *Jackson* as creating a binding presumption of no waiver, displacing the *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880, case-by-case analysis of waiver. See, e.g., *Wilson v. Murray* (4th Cir. 1986), 806 F.2d 1232; *People v. Crowder* (1986), 143 Ill. App. 3d 85, 492 N.E.2d 952.

■ However, the present case can be resolved without determining which standard should be applied. In accordance with *Jackson*, the crucial key in this case regarding the admissibility of defendant's confession is whether his incriminating statements resulted from police-initiated interrogation or whether he initiated the exchange that brought forth his confession. It is undisputed that defendant had earlier asserted his desire to have counsel serve as a medium between him and the State. (See *Maine v. Moulton* (1985), 474 U.S. 159, 176, 88 L. Ed. 2d 481, 496, 106 S. Ct. 477, 487.) It is also undisputed that the State initiated the "first" interview in violation of defendant's sixth amendment right to counsel. The record also reveals that Officer Smith "may" have told defendant that his wife had been arrested, after which the officers and assistant State's Attorney moved approximately 15 to 30 feet away from defendant's cell. They did not leave the area and, five minutes later, defendant asked them to return.

A 5- or even 10-minute interval is not sufficient to remove the taint of the original deliberate elicitation of information and/or the purposeful exploitation of an opportunity to confront defendant without the presence of his counsel. Keeping in mind that doubts must be resolved in favor of protecting a defendant's constitutional claim, the surrounding circumstances of this case clearly support a finding that the "second" interview, which the State claims was initiated by defendant, was a direct and immediate result of the unconstitutional "first" interview. Therefore, defendant's statements should have been suppressed.

Because we find that defendant's sixth amendment right to counsel was violated, we must reverse and remand for a new trial consistent with this opinion. Accordingly, there is no need to address the remaining issues.

Reversed and remanded.

LORENZ, P.J., and SULLIVAN, J., concur.