THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ERIC HUMPHRIES, Defendant-Appellee.

Fifth District   No. 5—90—0421

Opinion filed December 27, 1991.

Bob Haida, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Diane L. Campbell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and E. Joyce Randolph, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE WELCH delivered the opinion of the court:

The People of the State of Illinois appeal, pursuant to Supreme Court Rule 604(a) (134 Ill. 2d R. 604(a)), the order entered June 1, 1990, by the circuit court of St. Clair County and claim as grounds for this appeal that the suppression of evidence ordered by the court substantially impaired its ability to prosecute its criminal case against defendant, Eric Humphries. The People present two issues for our consideration on review of the June 1, 1990, order of the circuit court: (1) whether the court abused its discretion in allowing defendant's motion to suppress to be heard after jury selection had taken place; and (2) whether the court erred in finding that part of the defendant's statement made immediately following his polygraph examination was deliberately elicited in violation of defendant's sixth

amendment right to counsel and in ordering that this portion of defendant's statement to the polygraph examiner be suppressed. For reasons stated as follows, we affirm.

Defendant and Andre Polk were charged by criminal complaint with two counts of attempted armed robbery. At his arraignment defendant pleaded not guilty and requested that a public defender be appointed to represent him. The record indicates that defendant was represented by counsel at the preliminary hearing when the court ordered that the defendant be bound over to the grand jury.

The grand jury indicted defendant on charges of two counts of attempted armed robbery on February 9, 1990. A stipulation was made between the assistant public defender who represented defendant and the assistant State's Attorney to whom this case was assigned for prosecution, to the effect that if defendant would take and pass a polygraph examination, the State would dismiss the charges pending against him.

On May 9, 1990, defendant, an 18-year-old high school student, and his mother drove to the sheriff's department for the examination. The examiner, Robert Baldwin, was an employee of the St. Clair County sheriff's department. Defendant's mother did not accompany him to the room where he would be examined by Baldwin. The record reflects that defendant's attorney was not present on the day of the examination.

Mr. Baldwin testified at the hearing on the motion to suppress that the polygraph examination consists of three parts. In the first part he will obtain the person's consent, find out whether the person has been given his *Miranda* warnings, and go over the questions he will be asking during the examination. The second part is running the polygraph chart, and the third part is the posttest interview.

Baldwin testified that the request for the polygraph examination was made through the office of the State's Attorney. He admitted that he was aware that charges were pending against the defendant and that he had discussed the charges with defendant prior to the examination. Baldwin noted that he asked defendant about having been read his *Miranda* rights at the State's Attorney's office and that defendant stated that he had signed a *Miranda* form. Baldwin admitted, however, that it had been four months prior to the May 9, 1990, test when those rights had been read to defendant. Baldwin did ask defendant whether he understood the *Miranda* rights, whether he wanted to take the test, and whether he would like to have a lawyer, and defendant replied that he wanted to take the test. Baldwin did not obtain another signed *Miranda* waiver form.

Baldwin admitted that he knew that while defendant's statement during the polygraph examination could not be used against defendant in court, what defendant said subsequent to the test in the phase-three interview could be used against him. Although Baldwin testified that he had told defendant at the start of the procedure that whatever defendant told Baldwin could be used against him in a court of law, he did not specifically advise defendant that anything defendant said subsequent to the completion of the polygraph test could be used against him. In the written consent signed by defendant prior to the test, defendant stated that he submitted "voluntarily without duress, coercion, threat, promises or reward or immunity to be examined by polygraph (Lie Detector) detection of deception technique." In the consent defendant further agreed that "the final results of this examination may be made known and available to the proper person or persons requesting the examination."

The polygraph machine was attached to defendant's person and Baldwin asked him four relevant questions, four irrelevant questions, and two control questions. Baldwin testified that the polygraph chart which recorded defendant's answers showed that defendant was not telling the truth. Baldwin testified that he told defendant that he had not passed the test and showed him on the charts where defendant had failed.

In the posttest interview Baldwin testified that he had engaged in "light" conversation with defendant about "how this was going to affect him in his football and everything" and that defendant explained to Baldwin how events had occurred on the day of the alleged attempted armed robbery. Baldwin testified that defendant had told him that he and Polk had seen two people on the playground of the junior high school. Polk ran his shoulder into one of the two people, and this person pulled a knife. Defendant told Baldwin that Polk took off his belt and began hitting the person when the second individual threw a bottle of wine and some bricks at him. Polk and defendant began chasing the two people until they hailed a police car.

Baldwin testified that at this point he and defendant had started to walk out of the polygraph room. Baldwin then said, "You know, you still haven't explained why you failed the test; you talked about robbing them, didn't you[?]" Baldwin testified that defendant replied, "Yeah; we talked about ganking." Baldwin asked him what "ganking" meant and defendant said, "That means give us all you got, whatever you got, we want it all." Baldwin then asked defendant if he had talked with Polk about taking their money, and defendant stated, "I was going to take the wine from the girl and Polk was going to take

their money." After defendant and his mother left the sheriff's office, Baldwin typed up the posttest statement.

Defendant received the statement by way of supplementary discovery dated May 9, 1990. A jury trial was set to begin on May 30, 1990, and a jury was picked but not yet sworn when defendant made an oral *in limine* motion to suppress his posttest statement. The court stated at a hearing on May 30, 1990, that although originally designated a motion *in limine,* the motion had since become more in the nature of a motion to suppress and would require testimony. The court overruled the People's objection to the timeliness of the motion to suppress. The only witness at the hearing on defendant's motion to suppress was Robert Baldwin, whose relevant testimony is set forth above.

At the conclusion of the evidence, the court found that defendant's right to counsel had attached following the indictment, that under *Massiah v. United States* (1964), 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199, the State was prohibited from deliberately eliciting statements after the right to counsel had attached, but that defendant could waive that right "[b]y spontaneous utterances, declarations, talking to a non[ ]paid or non[ ]hired or non[ ]promised informant in jail." The court held that the statements made by the defendant immediately after the test was completed were voluntary and therefore must be allowed. The court held, however, that Baldwin's question, "You still haven't explained why you flunked the test," was a deliberate elicitation, violative of the sixth amendment, and so the balance of defendant's statement to Baldwin following that question must be suppressed.

■ We will first address the issue of whether defendant's motion to suppress was untimely. The People contend that defendant's motion which came after trial had begun was not made by defendant at the earliest possible occasion and that the motion was made orally, requiring the People to inquire as to the specific grounds on which it should present evidence at the hearing. The record reflects that defendant's written motion was filed with the court on June 1, 1990. The record further reflects that the People made no objection concerning an orally made motion at the hearing thereon.

Section 114—11 of the Code of Criminal Procedure of 1963 provides in pertinent part:

> "(a) Prior to the trial of any criminal case a defendant may move to suppress as evidence any confession given by him on the ground that it was not voluntary.

(b) The motion shall be in writing and state facts showing wherein the confession is involuntary.

(c) If the allegations of the motion state facts which, if true, show that the confession was not voluntarily made the court shall conduct a hearing into the merits of the motion.

(d) The burden of going forward with the evidence and the burden of proving that a confession was voluntary shall be on the State. Objection to the failure of the State to call all material witnesses on the issue of whether the confession was voluntary must be made in the trial court." (Ill. Rev. Stat. 1989, ch. 38, pars. 114—11(a) through (d).)

Section 114—12, a related section of the Code of Criminal Procedure of 1963, provides for motions to suppress evidence which has been illegally seized. (See Ill. Rev. Stat. 1989, ch. 38, par. 114—12.) Both sections 114—11 and 114—12 require that the motion to suppress be made before trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, and if the motion is made during trial, the court is required to determine that the motion is not untimely before it conducts a hearing on the merits. See Ill. Rev. Stat. 1989, ch. 38, pars. 114—11(g), 114—12(c).

At common law, a claim that evidence was obtained by illegal means had to be raised prior to trial by means of a motion to suppress, and this rule was based on principles of judicial economy, so that the court should not be required to interrupt a trial in order to determine a collateral issue of the manner in which evidence was obtained. (*People v. Flatt* (1980), 82 Ill. 2d 250, 262, 412 N.E.2d 509, 515, citing *People v. Braden* (1966), 34 Ill. 2d 516, 520, 216 N.E.2d 808, 810; *People v. Dalpe* (1939), 371 Ill. 607, 611, 21 N.E.2d 756, 758; *People v. Drury* (1929), 335 Ill. 539, 557, 167 N.E. 823, 830; *People v. Brocamp* (1923), 307 Ill. 448, 454, 138 N.E. 728, 731.) The supreme court held in *People v. Flatt* that by virtue of section 114—12 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 114—12), the court may in its discretion conduct a hearing on a motion to suppress evidence even though the motion is filed after trial has begun, where it is alleged that evidence was illegally seized. The court explained that the common law prohibition against filing a motion to suppress during trial was relaxed in section 114—12 so as not to prevail over a defendant's constitutional right to be free from unreasonable searches and seizures. (*Flatt*, 82 Ill. 2d at 262, 412 N.E.2d at 515.) The supreme court has further held that it is within the sound discretion of the trial court to entertain a motion to suppress evidence made after trial has begun, based on a violation of the

principles announced in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. (*People v. Hoffman* (1981), 84 Ill. 2d 480, 485, 419 N.E.2d 1145, 1147.) It has also been noted that section 114—11 was enacted by the Illinois legislature to allow for midtrial motions to suppress in limited circumstances in order to prevent the common law prohibition against filing motions to suppress during the trial from prevailing over a defendant's constitutional rights. *People v. Hughes* (1989), 181 Ill. App. 3d 300, 304, 536 N.E.2d 71, 73.

The record indicates that defendant's motion to suppress was based on an asserted violation of his sixth amendment right to counsel in eliciting the admission that defendant and Polk had planned to rob the alleged victims of the attempted robbery. Because defendant's constitutional rights were involved, we find that the court clearly had the discretion under the Code of Criminal Procedure of 1963 to hear defendant's motion to suppress, if it justifiably found the motion was not untimely. The People contend, however, that the court abused its discretion because defendant was aware of the grounds for the motion prior to trial and therefore the court should not have found defendant's motion to suppress to have been timely, citing *People v. Hughes*, in support of this proposition. The People point out that it produced defendant's statement in supplementary discovery dated May 9, 1990, in sufficient time for defendant to have filed a motion to suppress prior to trial, although the record does not indicate the date on which defendant's counsel actually received the statement. The People also point out that defendant's counsel was aware of the date of the polygraph test and chose not to accompany his client.

The circuit court in the instant case overruled the People's objection to the untimeliness of defendant's motion because only one witness needed to testify at the suppression hearing and so the hearing did not interfere with the trial. We also note that unlike the situation in the *Hughes* case, where defendant's motion to suppress was made after certain testimony was given before the jury and four prosecution witnesses had already testified, only jury selection had taken place in the instant case and no evidence had yet been presented to the jury. Moreover, the delay in presenting the motion appears to have been justified due to defense counsel's initial presentation of it procedurally to the court as a motion *in limine*. Although this mistake can only be attributable to the defendant, the prosecution was not prejudiced by the court's decision to hear the substance of the motion *in limine* as a motion to suppress where the jury had not yet been sworn and opening statement to the jury had not yet been made. We also agree with defendant that plaintiff waived its objection to the

requirement that the motion be made in writing by failing to object at the hearing to the lack of the written motion. (See *People v. McAdrian* (1972), 52 Ill. 2d 250, 253, 287 N.E.2d 688, 690 ("an issue not presented to or considered by the trial court cannot be raised by the appellant for the first time on review").) We therefore hold that the circuit court did not abuse its discretion in finding that the motion was timely and allowing defendant's motion to suppress to be heard after jury selection had taken place.

■ We next will determine whether the circuit court erred in finding that the part of defendant's statement made following the polygraph examiner's query, "You know you still haven't explained why you failed the test," was secured in violation of defendant's sixth amendment rights and thus erred in ordering its suppression. As noted above, the court found that defendant's right to counsel had attached after his indictment. The right to the assistance of counsel guaranteed by the sixth and fourteenth amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him—" 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " (*Brewer v. Williams* (1977), 430 U.S. 387, 398, 51 L. Ed. 2d 424, 436, 97 S. Ct. 1232, 1239, quoting *Kirby v. Illinois* (1972), 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1882.) The clear rule of *Massiah*, upon which the circuit court relied in making its decision, is that the sixth amendment right to counsel is violated when, after indictment and in the absence of counsel, incriminating statements are deliberately elicited from defendant by agents of the State and used against the defendant as evidence at trial. (*Massiah v. United States* (1964), 377 U.S. 201, 206, 12 L. Ed. 2d 246, 250, 84 S. Ct. 1199, 1203.) That the incriminating statements were elicited surreptitiously in the *Massiah* case, and as a result of direct interrogation in the instant case, is constitutionally irrelevant. *Brewer v. Williams*, 430 U.S. at 400, 51 L. Ed. 2d at 437, 97 S. Ct. at 1240.

The People contend, however, that though the right to counsel may have attached, it can be waived and was, in fact, waived by defendant when he spoke with Mr. Baldwin during the postpolygraph interview. The People argue that defendant was aware of his right to counsel and voluntarily came to the police station for the polygraph test because of the stipulation between his attorney and the assistant State's Attorney. Moreover, the People note that defendant was reminded of his *Miranda* rights before the test, was specifically asked

whether he wanted a lawyer, signed a consent form for the polygraph, and was told he could stop the polygraph test at any time.

The question of waiver is a matter of Federal constitutional law, and thereunder the State must prove " 'an intentional relinquishment or abandonment of a known right or privilege.' " (*Brewer v. Williams*, 430 U.S. at 404, 51 L. Ed. 2d at 439, 97 S. Ct. at 1242, quoting *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023.) This will depend in each case " 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' " (*Edwards v. Arizona* (1981), 451 U.S. 477, 482, 68 L. Ed. 2d 378, 385, 101 S. Ct. 1880, 1884, quoting *Johnson v. Zerbst*, 304 U.S. at 464, 82 L. Ed. at 1466, 58 S. Ct. at 1023.) The Supreme Court has held that the right to counsel does not depend upon a request by the defendant, that courts indulge in every reasonable presumption against waiver, and that the strict standard applies equally to an alleged waiver of the right to counsel whether at trial or at a critical stage of the proceedings. (*Brewer v. Williams*, 430 U.S. at 404, 51 L. Ed. 2d at 439-40, 97 S. Ct. at 1242.) Doubts regarding the validity of a defendant's waiver must be resolved in favor of protecting the constitutional claim. *Michigan v. Jackson* (1986), 475 U.S. 625, 633, 89 L. Ed. 2d 631, 640, 106 S. Ct. 1404, 1409.

The Supreme Court has held with regard to the right to counsel under the fifth and fourteenth amendments that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. (*Edwards v. Arizona*, 451 U.S. at 484, 68 L. Ed. 2d at 386, 101 S. Ct. at 1884-85.) In addition, the Court held that having expressed a desire to deal with the police only through counsel, an accused is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. *Edwards v. Arizona*, 451 U.S. at 484-85, 68 L. Ed. 2d at 386, 101 S. Ct. at 1885.

As explained in *Edwards*, the Supreme Court determined in *Miranda v. Arizona* (1966), 384 U.S. 436, 479, 16 L. Ed. 2d 694, 726, 86 S. Ct. 1602, 1630, that the fifth and fourteenth amendments' prohibition against compelled self-incrimination requires that custodial interrogation be preceded by advice to the putative defendant that he has the right to remain silent and also the right to the presence of an attorney. (*Edwards v. Arizona*, 451 U.S. at 481-82, 68 L. Ed. 2d at

384, 101 S. Ct. at 1883.) In *Edwards* the accused was informed of his rights under *Miranda* on the day of his arrest and asserted his right to counsel and to remain silent. The following day the police again confronted the accused, not at his suggestion or request and without furnishing counsel to him, and, as a result of that meeting, secured incriminating oral admissions from the accused. The Court concluded that there was no valid waiver in the making of this statement, and since the fruits of the illegal interrogation initiated by the police were inadmissible against the accused in court, the court found that the motion to suppress his statement should have been granted. *Edwards v. Arizona*, 451 U.S. at 485, 68 L. Ed. 2d at 387, 101 S. Ct. at 1885.

In *Michigan v. Jackson*, the Supreme Court held that if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his sixth amendment right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid. (*Michigan v. Jackson* (1986), 475 U.S. 625, 636, 89 L. Ed. 2d 631, 642, 106 S. Ct. 1404, 1411.) The Court in *Jackson*, in effect, extended the "bright-line rule" of *Edwards v. Arizona*, regarding fifth amendment waivers, to also encompass the waiver of the sixth amendment right to counsel, such that written waivers are insufficient to justify police-initiated interrogation after a sixth amendment request for counsel. (*People v. Hoskins* (1988), 168 Ill. App. 3d 904, 911, 523 N.E.2d 80, 84, citing *Jackson*, 475 U.S. at 635, 89 L. Ed. 2d at 642, 106 S. Ct. at 1410-11.) The Supreme Court reasoned in *Jackson* that the rule in *Edwards v. Arizona*, that once a suspect has invoked the right to counsel any subsequent conversation must be initiated by him, was established to safeguard preexisting rights. (*Jackson*, 475 U.S. at 626, 89 L. Ed. 2d at 636, 106 S. Ct. at 1405-06.) While the Court's decision in *Edwards v. Arizona* rested on the fifth amendment request for counsel made during custodial interrogation, the *Jackson* Court found that the reasoning of that case applied with even greater force to a sixth amendment case, which involves interrogation of an uncounseled prisoner who has asked for the help of a lawyer. (*Jackson*, 475 U.S. at 631, 89 L. Ed. 2d at 639, 106 S. Ct. at 1408.) The Court further noted that it construed a defendant's request for counsel as an extremely important fact in considering the validity of a subsequent waiver in response to police-initiated interrogation. (*Jackson*, 475 U.S. at 633 n.6, 89 L. Ed. 2d at 640 n.6, 106 S. Ct. at 1409 n.6.) The key, therefore, in determining admissibility of a defendant's confession under *Jackson* is whether his incriminating statement resulted from police-initiated interrogation or whether he initiated the exchange that brought forth his confession.

(*Hoskins*, 168 Ill. App. 3d at 912, 523 N.E.2d at 85.) Defendant contends that because an agent of the State initiated the interrogation which elicited his incriminating statement, under the reasoning of *Edwards* and *Jackson*, the circuit court did not err in holding his statement inadmissible.

The People argue, however, that defendant's rights under *Jackson* were not violated because the statement elicited through police interrogation was not obtained before defendant had been able to consult with counsel. In fact, the People argue, it was as a result of defendant's consultation with his court-appointed attorney that defendant voluntarily appeared for the polygraph examination. Defendant admits that the facts in the *Jackson* case differ from the instant case in that the defendant in *Jackson* had not yet met with an attorney following his request for counsel, prior to the police-initiated interrogation. As defendant correctly notes, however, this court rejected the same argument and held that such difference is without effect on the analysis of defendant's sixth amendment rights. (See *People v. Crowder* (1986), 143 Ill. App. 3d 85, 90, 492 N.E.2d 952, 955, *appeal denied* (1986), 112 Ill. 2d 582.) Defendant argues that even if he acknowledged his *Miranda* rights at the beginning of the polygraph examination, under *Jackson* his statement must still be suppressed because his attorney was not present during the postexamination questioning.

The People argue, however, that the determination of the validity of defendant's waiver in the instant case is not controlled by *Jackson* but by the Supreme Court's later decision in *Patterson v. Illinois* (1988), 487 U.S. 285, 101 L. Ed. 2d 261, 108 S. Ct. 2389. The issue in *Patterson* was whether the waiver made by defendant during postindictment questioning was a "knowing and intelligent" waiver of his sixth amendment rights, and the Court stated that the key inquiry was whether the accused was made sufficiently aware of his right to have counsel present during the questioning and of the possible consequences of a decision to forgo the aid of counsel. (*Patterson v. Illinois*, 487 U.S. at 292-94, 101 L. Ed. 2d at 272-73, 108 S. Ct. at 2394-95.) The Court in *Patterson* also resolved the issue of whether the right to counsel under the sixth amendment was any more difficult to waive than its fifth amendment counterpart and determined that, as a general matter, an accused who is admonished with the *Miranda* warnings has been sufficiently apprised of the nature of his sixth amendment rights and of the consequences of abandoning them such that the accused will be considered to have made a knowing and intelligent waiver of those rights. (*Patterson v. Illinois*, 487 U.S. at 296, 101 L. Ed. 2d at 275, 108 S. Ct. at 2396-97.) The People contend that

under the reasoning of *Patterson,* defendant must be considered to have made a knowing and intelligent waiver of his sixth amendment rights because he was admonished with the *Miranda* warnings prior to the polygraph examination.

A more careful reading of the Court's decision in *Patterson,* however, leads this court to conclude that it should not control our decision in the instant case. The Court in *Patterson* refused to apply the *Edwards* rule to invalidate a *Miranda* waiver by an accused who was questioned after having been indicted but before he had requested counsel at his arraignment. Therefore, while the sixth amendment rights may have attached with respect to the defendant in the *Patterson* case, the defendant had not yet exercised that right to counsel, unlike defendant in the instant case. Indeed, one court has recently observed with respect to the current status of the law after *Patterson* that the critical factor in determining the validity of a sixth amendment right-to-counsel waiver is whether defendant has requested the help of a lawyer in dealing with the police. (See *People v. Farrell* (1989), 181 Ill. App. 3d 446, 450, 536 N.E.2d 476, 479.) In reaching its decision, the Court in *Patterson* found that it was a matter of some significance that the defendant had not retained, or accepted by appointment, a lawyer to represent him at the time he was questioned by the authorities, but that once an accused has a lawyer, it could not be disputed that a distinct set of constitutional safeguards aimed at preserving the sanctity of the attorney-client relationship takes place. *Patterson v. Illinois,* 487 U.S. at 290 n.3, 101 L. Ed. 2d at 271 n.3, 108 S. Ct. at 2393 n.3, citing *Maine v. Moulton* (1985), 474 U.S. 159, 88 L. Ed. 2d 481, 106 S. Ct. 477.

The Supreme Court explained those constitutional safeguards in *Maine v. Moulton,* further clarifying the rule of *Massiah:*

"The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the State. \*\*\* [T]his guarantee includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right. The determination whether particular action by state agents violates the accused's right to the assistance of counsel must be made in light of this obligation. Thus, the Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached. [Citation.] However, knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much

a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity. Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent." (*Maine v. Moulton* (1985), 474 U.S. 159, 176, 88 L. Ed. 2d 481, 496, 106 S. Ct. 477, 487.)

The circuit court recognized the distinction when it differentiated between the part of defendant's postexamination statement which was "volunteered" by defendant and the part of his statement which resulted from the deliberatively elicitive query made by Mr. Baldwin. We find that the query constituted a knowing exploitation of an opportunity to confront the accused without counsel being present and agree with the court below that defendant's sixth amendment right to counsel was violated. While the discussion of defendant's *Miranda* rights with him prior to the polygraph examination may have constituted a knowing and voluntary waiver if defendant had not yet exercised his sixth amendment right to counsel, the initiation by Baldwin of interrogation designed to deliberately elicit an incriminating statement after defendant had accepted appointment of counsel causes the waiver to be deemed invalid.

Accordingly, we hold that the circuit court did not err in finding the particular part of defendant's statement to be inadmissible and in ordering the suppression of this part of defendant's statement. The June 1, 1990, order of the circuit court of St. Clair County is affirmed.

Affirmed.

GOLDENHERSH, P.J., and RARICK, J., concur.